Opinion of the Court.
THIS is a controversy for land claimed by the par* ties in virtue of original conflicting titles derived under the laws of Virginia. The plaintiffs in error, who tvere complainants in the circuit court, set up claim to the landdn- dispute, in virtue of the following entry:
“ September 4th, 1781 — -Richard Jackman enters 400 acres, upon a pre-emption warrant, to adjoin his former survey of 600 acres on the upper end, and to begin at an ash and dogwood tree, corner to William Craig’s settlement, and thence with his line south 10 west, 346 poles; thence south 80east, 185poles;thence north 10 east, 346 poles, to the said Jackman’s southeast corner, at a black-ash; thence the course of his former line 80 west, 185 poles, to the beginning.”
Jackman had obtained a certificate from the commissioners, for a seitlement of 400 acres, lying on the south side of Dick’s river, about a mile and a half from William Craig’s land, to include his improvement and a pre-emption of 1000 acres adjoining; and having obtained a pre-emption warrant, he had entered 600 acres of his pre-emption adjoining his settlement; and on the 24th of October 1780, a little more than ten months preceding the date of the entry under which the complainants claim, he had surveyed his settlement a.-d the entry of 600 acres upon Ms pre-emption warrant. A copy of the entry of the settlement with the surveyor is not exhibited in the record; and if it had been exhibited, there is some doubt, from the proof in the cause, whether it could have been sustained; and if it could not, it is obvious that the pre-emption entry of 600 acres adjoining it, could not he established. The establishment, however, of these entries, is of but little ¿importance, if the surveys be sufficiently established to *101 ■beseemed a legitimate object of location; for it is the survey, and not the entry, of the 600 acres, that is called for by the entry in question; and that the surveys are so established, we think there can be no doubt. The survey of the settlement, and that of the pre-emption entry of 600 acres, were made at the same time, and are in fact included in the- same plat and certificate •of survey, in virtue of which an inclusive patent has issued for both tracts.. From the length of time they had been made before the date of the entry in question, the law required them to be of record; and, of course, they must be presumed to be so. Their existence, therefore, could have'been easily ascertained; and as the lines and corners are proved to have been distinctly marked, and as the plat and certificate of survey contained, not only a particular description of their boundaries, but such general description as would lead a subsequent locator into their vicinity, there could not be much difficulty in finding the surveys. But it i3( moreover, in proof, that most of the neighbors w ere i» company with the surveyor when he made the survey, and that Jackman, at that time, actuallyresided on his settlement, and continued to do so until his death, which happened many years afterwards. Under -all these circumstances, we cannot hesitate in saying, that it would not have required more than reasonable diligence in a subsequent locator, to have ascertained these surveys, and the position of their lines and comers.
Nor could there have been any difficulty in discovering what was intended by the call “ to adjoin his former survey of 600 acres on the upper end." The survey of the pre-emption entry of 600 acres, lay in an oblong square, up and down the Hanging Fork, a stream well known by that name; and the call was consequently appropriately descriptive of the one end of the survey, in exclusion of the other. On the line of that end of the survey, there were an ash and a dogwood tree marked as a corner, and a line projecting from thence in the direction of the Hanging Fork, upwards,' and these might, no doubt, have been found by a subsequent locator, without the exertion of more than a reasonable degree of diligence; hut he would here have met with a difficulty in identifying that corner and the line projecting from it, with the call in the entry in question^ for the comer- and line of William Craig’s set *102 tlement. Craig had, indeed, obtained a certificate for a settlement, and entered it with the surveyor for “ 400 acres, lying on the Hanging Fork of Dick’s river, on the east side of said branch, three miles from Logan’s, to include his improvementand he had in fact made a survey thereon, of which the corner and line in question formed a boundary. • But how was a subsequent locator to have ascertained this fact? Craig’s survey had been made only about six weeks prior to Jackman’s entry calling for it; and it cannot be presumed, to have been then recorded, as the law did not require it to be so. We cannot conclude, therefore, that a subsequent adventurer could have found any evidence of the existence of the survey, from the records of the- country; nor can its existence be presumed to have been known to him as a matter enpais, unless it had been of general notoriety, and there is in the record no evidence of its having been notorious. Indeed, from the shortness of the period which had elapsed from the time of making the survey, the presumption is, that it could not have possessed-notorie*ty. The only mode, then, left to the subsequent enquirer, to have identified-the corner and line in question with the corner and line of Craig’s survey, would have been by comparing them with the calls of the certificate and entry, and ascertaining their coincidence therewith. But here he would also have failed to have found any assurance of the fact; for the survey, as made, is widely different from what the calls of the certificate and entry most obviously require. It does not even include the improvement of Craig; and if it had done so, and complied with the other calls, it is clear that it could not have reached Jackman’s survey of 600 acres, by many poles. It may be urged, theta subsequent locator, though he could not ascertain the line in question to be a line of Craig’s survey, would nevertheless infer,_ that as the line in fact existed, it must be the. one ■ in? tended by the entry, and, that the call for- it by. the name-of Craig’s line, was therefore harmless.; and,- that, if it cannot aid the entry, it ought not to be used- to its des-, traction. This argument would he entitled to. weight, if the description given of the line in the entry had been accurate in other respects; but it is not so. The entry describes the line as running south 10 west, when in,, fact it runs south 32 degrees west. Such a wide di£. ference would in itself he sufficient to create a distrust *103 ib the mind "of a subsequent enquirer, that the. line was not the one intended by the entry; but there is aftother inaccuracy in the calls of the entry, which would still tend to increase this distrust; for the third line, which is required by the calls of the entry to run to Jackman’s south-east corner, would not, by pursuing the courses and distances called for, strike Jackman’s survey, but would terminate some distance eastwardly of its southeast corner. When we couple with the distrust and doubt these inaccuracies would naturally inspire, the necessary effect, the apparently fallacious description of the line as Craig’s would have upon the mind of the subsequent locatox-, we cannot suppose that he would, or ought to he bound to conclude that the line in question was the one intended by the entry.
Upon the whole, we think that the entry is too inaccurate and fallacious in the description of its objects of location, to be deemed to possess the precision and certainty required by the law under which it was made.
The decree must be affirmed with costs.