[CHANCERY. LIMITATION. LOCAL LAW.]

## ELMENDORF, *Appellant,* v. TAYLOR and others, *Respondents.*

Although the statutes of limitation do not apply, in terms, to Courts of Equity, yet the period of limitation which takes away a right of entry, or an action of ejectment, has been held by analogy to bar relief in equity, even where the period of limitation for a writ of right, or other real action, had not expired.

Where an adverse possession has continued for twenty years, it constitutes a complete bar in equity, wherever an ejectment would be barred if the plaintiff possessed a legal title.

The rule which requires all the parties in interest to be brought before the Court, does not affect the jurisdiction, but is subject to the discretion of the Court, and may be modified according to circumstances.

In the Courts of the United States, wherever the case may be completely decided as between the litigant parties, an interest existing

in some other person, whom the process of the Court cannot reach, as if such party be a resident of another State, will not prevent a decree upon the merits.

The Courts of every government have the exclusive authority of construing its local statutes, and their construction will be respected in every other country.

This Court respects the decisions of the State Courts upon their local statutes, in the same manner as the State Courts are bound by the decisions of this Court in construing the constitution, laws, and treaties of the Union.

In Kentucky, a survey must be presumed to be recorded at the expiration of three months from its date, and an entry dependent on it is entitled to all the notoriety of the survey as a matter of record.

An entry in the following words, " W. D. enters 8,000 acres, beginning at the most southwestwardly corner of D. R.'s survey of 8,000 acres, between Floyd's Fork and Bull Skin ; thence along his westwardly line to the corner ; thence the same course with J. K.'s line north 2° west, 964 poles, to a survey of J. L. for 22,000 acres ; thence with Lewis' line, and from the beginning south 7° west till a line parallel with the first line will include the quantity," is a valid entry.

Such an entry is aided by the notoriety of the surveys, which it calls to adjoin, where those surveys had been made three months anterior to its date.

APPEAL from the Circuit Court of Kentucky. This was a bill in equity, brought by the appellant, Elmendorf, in the Court below, to obtain a conveyance of lands held by the respondents under a prior grant, and under entries which were all older than his entry. But the defendants below relied entirely on their patent ; and the case, consequently, depended on the validity of the plaintiff's entry. This entry was made on the 19th of April, 1784, as follows : " Walker Daniel enters 8,000 acres, beginning at the most southwestwardly corner of Duncan Rose's survey of 8,000 acres, between Floyd's Fork and Bull Skin ; thence along his westwardly line to the

1825.

Elmendorf
v.
Taylor.

corner; thence, the same course with Granville Smith's lower line, to John Lewis' corner; thence with Lewis' line, and from the beginning south 7° west, till a line parallel with the first will include the quantity." This entry was afterwards explained and amended on the 1st of July, 1784, so as to read as follows: " Walker Daniel enters 8,000 acres, beginning at the most southwestwardly corner of Duncan Rose's survey of 8,000 acres, between Floyd's Fork and Bull Skin; thence along his westwardly line to the corner; thence the same course with James Kemp's line north 2° west, 964 poles, to a survey of John Lewis for 22,000 acres; thence with Lewis' line, and from the beginning south 7° west, till a line parallel with the first line will include the quantity."

     The plaintiff's bill was dismissed by the Court below, and the cause brought by appeal to this Court. It was argued, at a former term, by Mr. *Clay*, and Mr. *Talbot*, for the appellant, and by Mr. *Bibb*, for the respondents, and was again argued at the present term by the same counsel.

*Feb. 20th.*     On the part of the appellant, it was contended, that the survey referred to in the amended entry, was, at the time, an object of sufficient notoriety to give validity to the entry, which called for one of its corners as a beginning. The Land Law of Virginia prescribes, that surveys shall be returned to the office, and recorded in a record book, to be kept for that purpose by the principal surveyor, within three months from the time

of their being made. This survey had thus become a matter of record: and subsequent purchasers were bound to know its position, in the same manner as they are bound to know the position of entries. The book of surveys has every quality of a record, except that the surveyor is restrained from granting copies until the time limited by law, for the return of surveys to the land office, has expired; and the notoriety attached to the record of survey, does not entirely depend on the right to demand a copy of it. The right to inspect it still exists, and this right has been considered by the legislature as giving sufficient notice, to all persons interested, to enter a *caveat* against the issuing of a patent. Were the question of novel impression, there could be no doubt. But it had been settled by a long series of decisions in the local tribunal, and has become a settled rule of property, which this Court would respect, in the same manner as it always respected the interpretation of local statutes by the State Courts.[a]

On the part of the respondents, it was insisted, that the prohibition in the statute to give a copy of the survey, excludes the idea of that notoriety which is ascribed to a record. Though inserted for preservation in a book, which is termed a book of record, it does not become substantially a matter of record, until it becomes public and accessible to all the world. Even if an inspection of

a The cases cited are enumerated in the opinion of the Court.

the book was demandable as a matter of right, such an inspection would, from the nature of things, be of no avail, unless an office copy could be obtained. The notoriety of the surveys referred to in the entry, would not, therefore, be inferred from the fact, that the three months, within which they were directed by the statute to be recorded, had expired before making the entry. It was, also, insisted, that the appellant's claim did not entitle him to maintain the bill in his own name, for the land in question. He was a tenant in common with others, and could not be allowed to sue in equity without making his co-tenants parties to the bill.[a] The length of time since which the plaintiff's title had accrued, was also insisted on as an equitable bar. More than twenty years had elapsed, and the principle was well settled, that a Cour of equity would adopt the analogy of the statute of limitations, applied to bar an entry, or an ejectment, as the rule to be applied to equitable rights and remedies.[b] The statute of limitations is made to protect against ancient claims, whether well or ill founded, the

a Hinde. Pract. 2.   16 Ves. 325.   6 Johns. Ch. Cas. 450   3 Bro. Ch. Rep. 229.   2 Ves. sen. 312.   4 Johns. Ch. Rep. 199.

b Francis' Max. X. p. 38.   Smith v. Clay, 3 Bro. Ch. Rep. 639. note.   Jenner v. Tracy, 3 P. Wms. note (B.) 2 Equ. Cas. Abr. tit. " Length of Time."   Cook v. Arnham, 3 P. Wms. 283.   Bond v. Hopkins, 1 Scho. & Lefr. 413.   Hovenden v. Lord Annesley, 2 Scho. & Lefr. 607.   1 Vern. 196. 362.   1 Ch. Rep. 105.   3 Atk. 225.   2 Ves. sen. 226.   2 Atk. 83.   Cholmondeley v. Clinton, 2 Jacobs & Walker, 138.

evidences of which may have been lost, or obscured by time."

1825.

Elmendorf
v.
Taylor.

March 5th.

Mr. Chief Justice MARSHALL delivered the opinion of the Court.

This suit was brought by the appellant, Elmendorf, in the Court for the seventh Circuit and District of Kentucky, to obtain a conveyance of lands held by the defendants under a prior grant, and under entries which are also older than the entry of the plaintiff. As the defendants do not adduce their entries, and rely entirely on their patent, the case depends on the validity of the plaintiff's entry. That was made in April, 1784, and was afterwards, in July of the same year, explained, or amended, so as to read as follows : " Walker Daniel enters 8,000 acres, beginning at the most southwestwardly corner of Duncan Rose's survey of 8,000 acres between Floyd's Fork and Bull Skin ; thence along his westwardly line to the corner ; thence the same course with James Kemp's line, north 2° west, 964 poles to a survey of John Lewis for 22,000 acres ; thence with Lewis' line, and from the beginning south 7° west, till a line parallel with the first line will include the quantity."

As this entry begins at " the most southwestwardly corner of Duncan Rose's survey of 8,000 acres between Floyd's Fork and Bull Skin," the first inquiry is, whether this survey was at the time an object of sufficient notoriety to give va-

a Clementson v. Williams, 8 Cranch's Rep. 72. Shipp v. Miller, 2 Wheat. Rep. 324.

lidity to an entry calling for one of its corners as a beginning. It is not pretended that the survey itself had acquired this notoriety; but the plaintiff contends that it had become a matter of record; and that subsequent purchasers were, on that account, bound to know its position, in like manner as they are bound to know the position of entries. The Land Law prescribes that surveys shall be returned to the office, and recorded in a record book, to be kept for that purpose by the principal surveyor, within three months from the time of their being made. They are to be returned to the land office in twelve months from their date, during which time the surveyor is forbidden to give a copy to any person other than the owner.

It is contended by the defendants, that this prohibition to give a copy of the plot and certificate of survey, excludes the idea of that notoriety which is ascribed to a record. Though inserted for preservation in a book which is denominated a book of record, it does not become, in fact, a record, until it shall partake of that characteristic quality of a record, on which the obligation to notice it is founded, being accessible to all the world. Were even an inspection of the book demandable as matter of right, which the defendants deny, that inspection would, they say, from the nature of the thing, be of no avail, unless a copy was also attainable. They insist, therefore, that the notoriety of these surveys is not to be implied from the fact that the three months had expired, during which they were directed by law to be recorded.

1825.

Elmendorf
v.
Taylor.

The plaintiff contends, that the book of surveys has every characteristic of a record, except that the surveyo᾽ is restrained from granting copies, until the time limited by law for the return of surveys to the land office shall have expired; and denies that the notoriety attached to a record is dependent entirely on the right to demand a copy of it. He maintains the right to inspect it, and insists that this right has been considered by the legislature as giving sufficient notice to all persons interested in the property to enter a *caveat* against the issuing of a patent, from which he implies that it is intended as a record to give notice, although a copy of it cannot be obtained.

Were this question now for the first time to be decided, a considerable contrariety of opinion respecting it would prevail in the Court; but it will be unnecessary to discuss it, if the point shall appear to be settled in Kentucky.

This Court has uniformly professed its disposition, in cases depending on the laws of a particular State, to adopt the construction which the Courts of the State have given to those laws. This course is founded on the principle, supposed to be universally recognised, that the judicial department of every government, where such department exists, is the appropriate organ for construing the legislative acts of that government. Thus, no Court in the universe, which professed to be governed by principle, would, we presume, undertake to say, that the Courts of Great Britain, or of France, or of any other nation, had misunderstood their own statutes, and therefore erect

How far this Court will respect the decisions of the State Courts, upon questions of local law.

1825.

Elmendorf
v.
Taylor.

itself into a tribunal which should correct such misunderstanding. We receive the construction given by the Courts of the nation as the true sense of the law, and feel ourselves no more at liberty to depart from that construction, than to depart from the words of the statute. On this principle, the construction given by this Court to the constitution and laws of the United States is received by all as the true construction; and on the same principle, the construction given by the Courts of the several States to the legislative acts of those States, is received as true, unless they come in conflict with the constitution, laws, or treaties of the United States. If, then, this question has been settled in Kentucky, we must suppose it to be rightly settled.

The defendants contend, that conflicting opinions have been given in the State, and that the question is still open; while the plaintiff insists, that the real question, that is, the notoriety of a survey after being made three months, has never been determined in the negative.

The first case of which we have any knowledge, is *Sinclair* v. *Singleton*, (*Hughes*, 92.) The decision of the Court was, in favour of the validity of an entry which calls for the lines of a survey. The Court is not in possession of the book in which the case is reported; but, judging from the references made to it in subsequent cases, the entry must have been made within twelve, and, probably, within three months of the date of the survey.

The next case in which the question was directly

made, is *Key* v. *Matson,* (*Hardin,* 70.) decided in the fall term of 1806. The survey had not been made three months, at the date of the entry; and the Court determined, that it was not an object of notoriety. A rehearing was moved for, and, according to the course of the Court of Appeals of Kentucky, errors were assigned in the original decree. The first was, that " the Court has decided, that an entry dependent on a survey not made three months, is void; whereas, according to law, and former decisions, such an entry ought to have been valid."

The Court adhered to its first decision, and used expressions, which, though applied to a case in which the entry was made before the expiration of three months after the survey on which it depended, yet indicated the opinion, that an entry, made after the expiration of three months from the date of the survey, would be equally invalid.

*Moore* v. *Whitlege,* (*Hardin,* 89.) and *Respass* v. *Arnold,* (*Hardin,* 115.) decided in the spring of 1807, were on the authority of *Key* v. *Matson,* and were also cases in which the entries were made a few weeks after the surveys. The case of *Cartwright* v. *Collier,* (*Hardin,* 179.) decided in the spring of 1808, was one in which the entry was made only fifteen days after the survey. In *Ward* v. *Lee,* (1 *Bibb,* 27.) decided in 1808, the entry called for a survey which had been made twenty-three days, of the return of which, to the office, there was no proof. The Judge adds, " if it had been returned and re-

1825.

Elmendorf
v.
Taylor.

corded; yet no person was entitled to a copy." This last observation is indicative of the opinion, that a survey, though recorded, would not become an object of notoriety until a copy of it was demandable; but it was made in a case in which that point did not occur. The case of *Cleland's heirs* v. *Gray*, decided at the same time, is of the same character. The survey was made sixteen days before the entry which called to adjoin it. The Judge says, " it is clear, that no description in this certificate of Evan Shelby's survey, can aid Weeden's entry, because it does not appear that the certificate was even made out, or deposited in the surveyor's office, at the date of Weeden's entry. But, if it had been recorded, yet it was inaccessible to holders of warrants. They were not entitled to a copy until twelve months after the making of the survey; nor was the surveyor himself bound to record it in less than three months after the survey was made."

In the case of *Galloway* v. *Neale et al.* (1 *Bibb*, 140.) the Judge who delivered the opinion of the Court, states the law thus : " If the holder of a warrant adopts a survey previously made upon another warrant as the basis of a location, he must prove the notoriety of the survey at that period, otherwise his location cannot be supported. If he has adopted such survey at a period earlier than that at which the law has opened the record thereof for copies, he must prove its notoriety by evidence *aliunde*."

This plain declaration of the opinion of the Court on this point, was, however, made in a

case in which it did not arise. The survey had
preceded the entry which called for it, more than
twelve months.

The cases of *Davis* v. *Bryan*, (2 *Bibb*, 113.)
and *Davis* v. *Davis*, (2 *Bibb*, 137.) decided in
the spring of 1810, were, each of them, cases in
which the surveys preceded the entries calling
for them, less than three months.

It is, then, true, that from 1806 to 1810, inclu-
sive, the prevailing opinion of the Court of Ken-
tucky was, that an entry could derive no aid from
the description contained in the plat and certifi-
cate of a survey for which it called, until that
survey had been made twelve months; but, it is
also true, that this opinion has been advanced
only in cases in which the point did not occur.

The first case in which the point actually oc-
curred, was *Carson* v. *Hanway*, (3 *Bibb*, 160.)
The entry was made on the 9th of February,
1784, and called for a survey made on the 15th
of February, 1783. The entry was supported,
on the principle, that the plat, and certificate of
survey, constituted a part of it. In delivering
the opinion of the Court, the Judge said, " when
the survey has been so long made, that the law
requires it to be of record, it will be presumed
to be so, and a call for its lines, in an entry, will
render it a part of the description of such entry."

At the preceding term, before the same Judges,
the case of *Bush* v. *Jamison*, (3 *Bibb*, 118.) was
argued, and the Court determined, that an entry
could not be aided by the description contained
in a survey which had been made only seven days

1825.

Elmendorf
v.
Taylor.

prior to the entry which called to adjoin it. In giving its opinion, the Court says, " how far a subsequent adventurer would have been bound by a description given in the survey of its beginning corner, if the survey had been of record, is not material to inquire ; for there is no proof that the survey was, in fact, of record ; and, as the law did not require that it should have been recorded at the date of the entry, a presumption that it was cannot be indulged, according to any rule of probability, or on any principle recognised in former adjudications of this Court."

These cases, decided so near each other, by the same Judges, show clearly, by the terms in which they are expressed, that the distinction between a survey, neither recorded in fact, nor in presumption of law, was in the mind of the Court ; and that its former adjudications were considered.

*Reed's heirs* v. *Dinwiddie*, (3 *Marsh. Rep.* 185.) was decided in the year 1820. In that case, an entry called for a survey which had been made six months, and the Court determined, that the person claiming under this entry might avail himself of the notoriety contained in the certificate of survey, " which, from its date, must have been of record."

*Jackman's heirs* v. *Walker's heirs*, (3 *Litt. Rep.* 100.) is the last case which has been cited. It was decided in 1823. The surveys were made about ten months before the entry, which called to adjoin them, and the Court allowed to the entry all the aid which could be derived from the

description contained in the next certificate of
survey; because, "from the length of time they
had been made before the date of the entry in
question, the law required them to be of record,
and, of course, they must be presumed to be so."

1825.

Elmendorf
v.
Taylor.

From the year 1813, then, to the present time,
the Courts of Kentucky have uniformly decided,
that a survey must be presumed to be recorded
at the expiration of three months from its date;
and that an entry dependent on it is entitled to
all the notoriety which is possessed by the sur-
vey.   We must consider the construction as set-
tled finally in the Courts of the State, and that
this Court ought to adopt the same rule, should
we even doubt its correctness.

We think, then, that the entry under which the
plaintiff claims, is aided by the notoriety of the
surveys which it calls to adjuin, if those surveys
have been made three months anterior to its
date.

This depends on the question whether it is to
date from April or July, 1784.   The defendants
insist that the amendment, or explanation, of the
first of July, does not change the ground original-
ly occupied, and is, therefore, not to be consi-
dered as having any influence on the date of the
entry, or as connecting it with the surveys men-
tioned in the amendment or explanation.

We cannot think so.   This amendment would
be seen by subsequent locaters, and would give
them as full notice that the entry adjoined the
surveys of Duncan Rose, James Kemp, and
John Lewis, as they would have received had the

1825.

Elmendorf
v.
Taylor.

original entry been made on that day. Were it then to be conceded that the original entry, calling for Greenville Smith's line, instead of James Kemp's, would have been construed to cover the same ground which it now covers, still we perceive no substantial reason for refusing to the change made in its terms any advantage belonging to the date of that change.

We think, then, for the purpose of the present inquiry, the entry is to be considered as if made on the first of July, 1784, and is entitled to all the notoriety of the surveys for which it calls.

This being established, we do not understand that any controversy remains on the question of notoriety. Some of the objects called for in the surveys are so well known, as to fix incontrovertibly the beginning of the entry made by Walker Daniel; and its validity is not questioned on any other ground.

The validity of the plaintiff's entry being established, it remains to consider the other objections which are made to a decree in his favour.

2. It is contended, that he is a tenant in common with others, and ought not to be permitted to sue in equity, without making his co-tenants parties to the suit.

Rule as to necessary parties to a bill in equity.

This objection does not affect the jurisdiction; but addresses itself to the policy of the Court. Courts of equity require, that all the parties concerned in interest shall be brought before them, that the matter in controversy may be finally settled. This equitable rule, however, is framed by

the Court itself, and is subject to its discretion. It is not, like the description of parties, an inflexible rule, a failure to observe which turns the party out of Court, because it has no jurisdiction over his cause ; but, being introduced by the Court itself, for the purposes of justice, is susceptible of modification for the promotion of those purposes. In this case, the persons who are alleged to be tenants in common with the plaintiffs, appear to be entitled to a fourth part, not of the whole tract, but of a specially described portion of it, which may, or may not, interfere with the part occupied by the defendants. Neither the bill nor answers allege such an interference, and the Court ought not, without such allegation, to presume it. Had the decree of the Circuit Court been in favour of the plaintiff, and had this objection to it been deemed sufficient to induce this Court to reverse it, and send back the case for the examination of this fact, it could never have justi ed a d mission of the bill without allowing the plaintiff an opportunity of showing that he was the sole owner of the lands in dispute. In addition to these observations, it may be proper to say, that the rule which requires that all persons concerned in interest, however remotely, should be made parties to the suit, though applicable to most cases in the Courts of the United States, is not applicable to all. In the exercise of its discretion, the Court will require the plaintiff to do all in his power to bring every person concerned in interest before the Court. But, if the case may be completely de-

1825.

Elmendorf
v.
Taylor.

cided as between the litigant parties, the circumstance that an interest exists in some other person, whom the process of the Court cannot reach, as if such party be a resident of some other State, ought not to prevent a decree upon its merits. It would be a misapplication of the rule, to dismiss the plaintiff's bill because he has not done that which the law will not enable him to do.[a]

3. The third point in the defence is, the length of time which has elapsed since the plaintiff's equitable title accrued.

His patent was issued on the 11th of February, 1794, and those of the defendants are of prior date. His bill was filed on the 28th of December, 1815. Several of the defendants, in their answers, claim the benefit of the length of time.

Lapse of time, an equitable bar, by analogy to the effect of the statute of limitations at law.

From the earliest ages, Courts of equity have refused their aid to those who have neglected, for an unreasonable length of time, to assert their claims, especially where the legal estate has been transferred to purchasers without notice. Although the statutes of limitations do not, either in England, or in these States, extend to suits in Chancery; yet the Courts in both countries have acknowledged their obligation. Their application, we believe, has never been controverted; and in the recent case of *Thomas* v. *Harvie's heirs*,[b] decided at this term, it was expressly recognised. But, the statute of limitations, which

a As to who are necessary parties to a bill in equity, *vide ante*, vol. 8. p. 451. note *a*.

b *Vide ante*, p. 146.

bars an ejectment after the lapse of twenty years, constitutes no bar to a writ of right, even where the tenant counts on his own seisin, until thirty years shall have elapsed. Whether a Court of equity considers an equitable claim to land as barred when the right of entry is lost, or will sustain a bill as long as the mere right may be asserted, is a question of some difficulty, and of great importance. The analogy of a bill in equity to actions founded on a right of entry, seems to derive some title to consideration, from the circumstance, that the plaintiff does not sustain his claim on his own seisin, or that of his ancestor, but on an equity not necessarily accompanied by seisin, whereas seisin is an indispensable ingredient in a writ of right. But the case must depend upon precedent, and if the one rule or the other has been positively adopted, it ought to be respected.

In the case of *Jenner* v. *Tracy,* (3 *P. Wms.* 287. in a note,) the defendant demurred to a bill to redeem mortgaged premises, of which the defendant had been in possession more than twenty years, and the demurrer was sustained; the Court observing, that " as twenty years would bar an entry or ejectment, there was the same reason for allowing it to bar a redemption." It is added, that " the same rule was agreed in the case of *Belch* v. *Harvey,* by the Lord Talbot. In 3 *Atk. Rep.* 225. the Court expressed an opinion unfavourable to a demurrer in such a case, because the plaintiff ought to be at liberty, in his replication, to show, that he is within the exceptions of

Vol. X. 22

1825.

Elmendorf
v.
Taylor.

the statute; but supported the bar when pleaded. The same principle is recognised in 3 *Atk. Rep.* 313. The rule appears to have been laid down in 1 *Ch. Cas.* and to have been observed ever since.

In 3 *Johns. Ch. Rep.* Chancellor Kent said, " It is a well settled rule, that twenty years possession by the mortgagee, without account or acknowledgment of any subsisting mortgage, is a bar to a redemption, unless the mortgagor can bring himself within the proviso in the statute of limitations."

These decisions were made on bills to redeem mortgaged premises; but as no reason can be assigned why an equity of redemption should be barred in a shorter time than any other equity, they appear to us to apply with equal force to all bills asserting equitable titles. We have seen no dictum asserting that the rule is not applicable to other equitable rights, and we should not feel justified in drawing a distinction which has never heretofore been drawn. But we think the rule has been applied to equitable rights generally.

In the 2d vol. of *Eq. Cas. Abr.* title " *Length of Time*," it is said generally, " that possession for more than twenty years, under a legal title, shall never be disturbed in equity." The case of *Cook* v. *Arnham*, (3 *P. Wms.* 283.) was a bill brought to supply the want of a surrender of copyhold estate to the use of the will; and it was objected, that the application to the Court had been unreasonably delayed. The Lord Chancellor said, that " the length of time was not

above fourteen years, which, as it would not bar an ejectment, so neither could it bar a bill in equity."

The case of *Bond* v. *Hopkins et al.* (1 *Sch. & Lef.* 413.) was a suit brought by a person claiming to be the heir, to set aside a will alleged to be obtained by fraud, to obtain possession of title papers, and to remove impediments out of the way in a trial at law. Length of possession was set up as a bar to the relief prayed for in the bill; and the question, which was discussed at the bar by very eminent counsel, was profoundly and deliberately considered by Lord Redesdale. The testator died in November, 1754; and the bill was filed in June, 1792, so that thirty-eight years had elapsed between the death of the testator and the filing of the bill. As this time was not sufficient to bar a writ of right, no question could have arisen respecting the act of limitations, had the rule of granting relief in equity depended on the ability of the plaintiff to maintain a writ of right. But the rule was clearly understood, both at the bar and by the Court, to be, that the equitable rule respecting length of time had reference to twenty years, the time during which the right of entry was preserved, not to the time limited for maintaining a writ of right. In the very elaborate and very able opinion given by the Chancellor, in this case, in which he investigates thoroughly the principles which govern a Court of equity in its decisions on the statute of limitations, it is not insinuated that it acts in any case from

1825.  analogy to a writ of right, but is assumed as an
       acknowledged and settled principle that it acts
Elmendorf   from analogy to a writ of ejectment. In this case,
   v.    a suit had been instituted by John Bond, the
Taylor.  grandfather of the plaintiff, as early as 1755, and
a decree pronounced in 1770. The full benefit
of this decree was not obtained, and John Bond
took forcible possession of a part of the property,
of which he was dispossessed by order of the
Court, on a bill for that purpose, brought by the
defendant. The said John Bond died in prison,
in 1774, having first devised the property in dis-
pute to his son Thomas, then an infant, for life,
with remainder to his first, and other sons, in
strict settlement. Soon after his death, an eject-
ment was brought by the defendant, to recover
part of the property in possession of Bond; and
in 1776, a bill was filed by Thomas Bond, then a
minor, to enjoin the defendants from proceeding
in their ejectment, and to have the will delivered
up. Various orders were taken; and in June,
1792, an original bill, in the nature of a bill of re-
vivor, was filed by Thomas Bond, and his eldest
son Henry. In discussing this case, so far as
respected length of time, no doubt was entertained
that the plaintiffs would have been barred of all
relief in equity, by a quiet acquiescence in the
possession of the defendants for twenty years.
It was a strong case of fraud, but an acquies-
cence of twenty years would have closed the
Court of Equity against the plaintiffs. This was
not questioned; but it was insisted that the pen-
dency of suits, from the year 1755. when John

Bond, the son and heir of the testator, returned from America, had preserved the equity of the plaintiffs, unaffected by the lapse of time; and of this opinion was the Court.

The case of *Hovenden* v. *Lord Annesly*, (2 *Sch. & Lef.* 607.) was a bill filed in May, 1794, to set aside a conveyance made in July, 1726, alleged to have been fraudulently obtained. There were some circumstances on which the plaintiff relied, as relieving his case from the laches justly imputable to him for permitting such a length of time to elapse; but they need not be noticed, because they were deemed insufficient by the Chancellor, and the bill was dismissed. In discussing this point, Lord Redesdale reviewed the cases which had been determined, and said, " that it had been a fundamental law of state policy, in all countries, and at all times, that there should be some limitation of time, beyond which the question of title should not be agitated. In this country, the limitation has been fixed (except in writs of right, and writs depending on questions of mere title) at twenty years." " But it is said, that Courts of equity are not within the statute of limitations. This is true in one respect; they are not within the words of the statutes, because the words apply to particular legal remedies; but they are within the spirit and meaning of the statutes, and have been always so considered." After reasoning for some time on this point, and citing several cases to show " that wherever the legislature has limited a period for law proceedings, equity will, in ana-

1825.

Elmendorf
v.
Taylor.

logous cases, consider the equitable rights as bound by the same limitation," he says, " a Court of equity is not to impeach a transaction on the ground of fraud, where the fact of the alleged fraud was within the knowledge of the party sixty years before. On the contrary, I think the rule has been so laid down, that every right of action in equity, that accrues to the party, whatever it may be, must be acted upon, at the utmost, within twenty years."

This question was fully discussed, and solemnly, and, we think, finally decided, in the case of the *Marquis Cholmondeley* v. *Lord Clinton et al.* reported in the 2d vol. of *Jacobs & Walker*. In that case, the title accrued in December, 1791, and the bill was filed in June, 1812. Other points were made; but the great question on which the cause depended, was the length of time which had been permitted to elapse ; and this question, after being argued with great labour and talent at the bar, was decided by the Court, upon a full review of all the cases which are to be found in the books. It was considered, and was treated by the Court, as one of the highest importance ; and the opinion was unequivocally expressed, that " both on principle and authority, the laches and non-claim of the rightful owner of an equitable estate, for a period of twenty years, (supposing it the case of one who must, within that period, have made his claim in a Court of law, had it been a legal estate,) under no disability, and where there has been no fraud, will constitute a bar to equitable relief, by analogy to the statute of limitations.

if, during all that period, the possession has been held under a claim unequivocally adverse, and without any thing having been done, or said, directly or indirectly, to recognise the title of such rightful owner by the adverse possessor." Upon this ground alone the bill was dismissed. The plaintiff appealed to the House of Lords, and the decree was affirmed.

1825.

Elmendorf
v.
Taylor.

The Lord Chancellor, in delivering his opinion in the House of Lords, took a distinction, as to length of time, between trusts, " some being express, and some implied." " In the case of a strict trustee, it was his duty to take care of the interest of his *cestui que trust,* and he was not permitted to do any thing adverse to it; a tenant also had the duty to preserve the interests of his landlord; and many acts, therefore, of a trustee, and a tenant, which, if done by a stranger, would be acts of adverse possession, would not be so in them, from its being their duty to abstain from them."

In a case of actual adverse possession, however, as was that before the House, his lordship considered twenty years as constituting a bar. Lord Redesdale was of the same opinion, and, in the course of his address, remarked, that " it had been argued, that the Marquis Cholmondeley might, at law, have had a writ of right. That was a writ to which particular privileges were allowed, but Courts of equity had never regarded that writ, or writs of *formedon,* or others of the same nature. They had always considered the provision in the statute of *James,* which applied

to rights, and titles of entry, and in which the period of limitation was twenty years, as that by which they were bound, and it was that upon which they had constantly acted."

This is not an express trust. The defendants are not, to use the language of the Lord Chancellor in the case last cited, " strict trustees, whose duty it is to take care of the interest of *cestui que trusts*, and who are not permitted to do any thing adverse to it." They hold under a title in all respects adversary to that of the plaintiff, and their possession is an adversary possession. In all cases where such a possession has continued for twenty years, it constitutes, in the opinion of this Court, a complete bar in equity. An ejectment would be barred, did the plaintiff possess a legal title.

This point has been decided in the same manner by the Courts of Kentucky. The counsel for the plaintiff insist, that those decisions are founded on the peculiar opinions entertained by that Court respecting writs of right. We do not think so. Their doctrine on that subject is, indeed, used as an auxiliary argument; but it is merely auxiliary to an opinion formed without its aid.

The decree of the Circuit Court is to be reversed, and the cause remanded to that Court, with instructions, that the entry under which the plaintiff claims is valid; but that the adversary possession of the defendants respectively, constitutes a complete bar to the plaintiff's bill:

wherever it would constitute a bar to an eject-
ment, did the plaintiff possess the legal title.[a]

(a) Although, in general, length of time is no bar to an express
trust, clearly established to have once existed; yet, as length of time
necessarily obscures all human evidence, and deprives parties
of the means of ascertaining the nature of the original transactions,
it operates, by way of presumption, in favour of innocence, and
against the imputation of fraud. It was, therefore, held by this
Court, that the lapse of forty years, and the death of all the ori-
ginal parties, would discharge and extinguish a trust, proved once
to have existed by strong circumstances; by analogy to the rule
of law, which, after the lapse of time, presumes the payment of a
debt, surrender of a deed, and extinguishment of a trust, where cir-
cumstances require it. (*Prevost* v. *Gratz*, *ante*, vol VI. p. 481.
497.) In the case of *Hillary* v. *Waller*, (12 *Ves.* 265.) the whole
subject of presumptions from the lapse of time is gone fully into
by Lord ERSKINE, both as applicable to incorporeal hereditaments,
and where there is a written title. He states the doctrine to be
founded in reason, the nature and character of man, and the re-
sult of human experience. " It resolves itself into this, that a
man will naturally enjoy what belongs to him." " It has been
said, you cannot presume, unless you believe. But it is because
there are no means of creating belief or disbelief, that such general
presumptions are raised upon subjects, of which there is no record
or written muniment. Therefore, upon the weakness and infirmi-
ty of all human tribunals, judging of matters of antiquity, instead
of belief, which must be the foundation of the judgment upon a
recent transaction, where the circumstances are incapable of form-
ing any thing like belief, the legal presumption holds the place of
particular and individual belief."

Although some of the principles laid down in this decision
seem to be questioned by Mr. Sugden, in his treatise on the Law
of Vendors and Purchasers, (p. 250.) yet it was cited with entire
approbation, and its doctrine adopted by this Court, in determin-
ing the above case of *Prevost* v. *Gratz*, (*ante*, vol. VI. p. 504.)

In the case of *Smith* v. *Clay*, (reported in 3 *Bro. Ch. Rep.* 639.
note,) and which is also cited and adopted by this Court in the
case of *Thomas* v. *Harvie's heirs*, (*ante*, p. 146.) Lord CAMDEN
says, " A Court of equity, which is never active in relief against

1825.

Elmendorf
v.
Taylo..

DECREE. This cause came on, &c. on consideration whereof, this Court is of opinion, that there is error in the decree of the said Circuit

conscience, or public convenience, has always refused its aid to stale demands, where the party has slept upon his right, and acquiesced for a great length of time. Nothing can call forth this Court into activity, but conscience, good faith, and reasonable diligence; where these are wanting, the Court is passive, and does nothing. Laches and neglect are always discountenanced, and, therefore, from the beginning of this jurisdiction, there was always a limitation to suits in this Court." After applying this principle to limit a bill of review and appeals, by analogy to the statute concerning writs of error, he proceeds to cite the maxim, *Expedit reipublicæ ut sit finis litium*, and to state that it had prevailed in the Court of Equity, in all times, without the help of an act of Parliament. " But as the Court has no legislative authority, it could not properly define the time of bar, by a positive rule, to an hour, a minute, or a year; it was governed by circumstances. But as often as Parliament had limited the time of actions and remedies to a certain period in legal proceedings, the Court of Chancery adopted that rule, and applied it to similar cases in equity. For where the legislature had fixed the time at law, it would have been preposterous for equity, which, by its own proper authority, always maintained a limitation, to countenance laches beyond the period that law has been confined to by Parliament. Therefore, in all cases, where the legal right has been barred by Parliament, the equitable right to the same thing has been concluded by the same bar. Thus, the account of rents and profits, in a common case, shall not be carried beyond six years. Nor shall redemption be allowed after twenty years possession in a mortgagee."

So, also, this Court, in the case of *Hughes* v. *Edwards*, (*ante*, vol. IX. p. 489. 497.) adopted the same principle in relation to the effect of the lapse of time upon the respective rights of mortgagor and mortgagee; and of purchasers claiming under the former.

The great case of *Cholmondeley* v. *Clinton*, cited in the text, was that of an estate subject to a mortgage in fee, being in settlement with an ultimate limitation to the right heirs of S. R.; A., on the expiration of the previous estate, entered, claiming to be entitled under the limitation: and he. and after his death, his son,

Court, in this, that the said Court determined, that the entry in the bill mentioned, made by Walker Daniel, on the first day of April, 1784,

continued in quiet possession, paying interest on the mortgage, for twenty years. It was finally determined, after much litigation, that the devisee of the person really entitled under the limitation, was barred by the length of time.

The case, as first decided in the Court of Chancery, will be found reported in 2 *Meriv. Rep.* 173. 357. where it was determined, by Sir *W. Grant*, M. R., that the lapse of time was no bar by analogy to the statute of limitations. Upon its afterwards coming on before his successor, Sir *T. Plumer*, the latter delivered a learned and elaborate judgment, which will be found reported in 2 *Jacobs & Walker*, 138. tending to show, that wherever in the claim of a legal estate, the remedy is barred in a Court of law by the statute of limitations, the remedy for an equitable estate will be equally barred, by the lapse of the same period of time, in a Court of equity. An appeal was taken to the House of Lords, and in moving the judgment of the House, Lord *Eldon* adverted to the general principles adopted by Courts of equity on the subject of length of time, and observed on " the vast difference between trusts, some being express, some implied; some, relations formed between individuals in the matter in which they deal with each other, and in which it could hardly be said, that one was trustee, and the other *cestui que trust*, and yet it could not well be denied, that for some purposes they were so. Of this kind, he took the relation between mortgagor and mortgagee to be. In the case of a strict trustee, it was his duty to take care of the interest of his *cestui que trust*, and he was not permitted to do any thing adverse to it; a tenant, also, had a duty to preserve the interests of his landlord; and many acts, therefore, of a trustee and tenant, which, if done by a stranger, would be acts of adverse possession, would not be so in them, from its being their duty to abstain from them. But the case of a mortgagee was different, he being at liberty to hold possession, and not becoming strictly a trustee until the money was tendered to him, and having a right, if he continued in possession for twenty years, without acknowledging the mortgage, to turn round on the mortgagor, and say that the estate was his own.

and explained on the first day of July of the same year, on which the plaintiff's title is founded, is invalid ; whereas, this Court is of opinion,

His lordship could not agree to, and had never heard of, such a rule, as that adverse possession, however long, would not avail against an equitable estate ; he meant, where there was no duty which the person who has it has undertaken to discharge for him against whom he pleads adverse possession. The possession of Lord Clinton was adverse ; it had been said, that it was taken by consent, founded on mistake ; but that did not make the possession the less adverse, because Lord Clinton took, and kept it for himself, where he owed, as it appeared to him, no duty to Lord Orford. He concluded by stating his opinion to be, that adverse possession of an equity of redemption for twenty years, was a bar to another person claiming the same equity of redemption, and worked the same effect, as disseisin, abatement, or intrusion, with respect to legal estates ; and that, for the quiet and peace of titles, and the world, it ought to have the same effect. Lord *Redesdale* concurred, and the decree was affirmed.

Although, in general, lapse of time is not a bar to a direct trust, as between trustee and *cestui que trust,* so long as there is a continuing and subsisting trust acknowledged and acted upon between the parties, yet this must be understood as applying to such trusts only as are the creatures of a Court of equity, or strict technical trusts, and not to those which are within the cognisance of a Court of law ; for, in regard to all those trusts which are the ground of an action at law, and where there is a concurrent jurisdiction at law, and in equity, the rule is the same, and the statute is a bar, both in a Court of law, and equity. (*Kane v. Bloodgood,* 7 *Johns. Ch. Rep.* 90. 127.) And, though in cases of trusts peculiarly and exclusively of equity jurisdiction, the statute does not apply ; yet, if the trustee denies the right of the *cestui que trust,* and the possession of the property becomes adverse, lapse of time may constitute a bar in equity. (*Ib.*) And where a person takes possession of property in his own right, and is, afterwards, by evidence or construction, changed into a trustee, he may insist on the lapse of time as a bar. (*Decouche v. Savatier,* 3 *Johns. Ch. Rep.* 190.)

that the same is a valid entry. It is, therefore, ORDERED and DECREED, that the decree of the said Circuit Court, dismissing the plaintiff's bill, ought to be, and the same is hereby, reversed and annulled. And this Court is further of opinion, that in cases of adversary title, such an adversary possession as would bar an ejectment, did the plaintiff possess the legal title, constitutes also a bar to a bill in equity. It is, therefore, further ORDERED and DECREED, that this cause be remanded to the said Circuit Court, with instructions to take such further proceedings therein, conformably to this opinion, as may be agreeable to equity and good-conscience. All which is ordered and decreed accordingly.