Cabell, J.
I concur in the opinion of judge Carr, as to tire correctness of the decree, in all respects, excepting the requiring an account of rents and profits. In my opinion, it was premature, in the actual state of the cause, to order such an account to be rendered; since it may hereafter appear, upon the amended bill, that the plaintiff has not acquired any just right to Sims's equitable title to the land; and it is wrong to put the defendants to the trouble of rendering an account of rents and profits, till it be ascertained, that the plaintiff has a right to demand it. I am, therefore, for correcting the decree in this respect, and reversing it for this cause, and affirming it as to all things else.
Brooke, President.
As respects some of the objections taken to the decree, in the argument, the appeal to this court was certainly premature.
The chancellor having rightly decided, that the legal title. to the land in controversy, was in neither of the parties, the *253 next question was, which of them had the better equitable right. Morgan’s patent being older than the patent under which the defendants claimed, the legal title was in his devisee, Mrs. JYeville. Sims under whom the plaintiff claimed, there can bo no doubt, purchased the land of Morgan, and paid for it. The evidence of .fLrmistead, corroborated by that, of Summerton, might not bo conclusive of that fact; but the release of Mrs. JYeville, the devisee of Morgan, to the plaintiff, though it conveyed nothing, was conclusive evidence that she claimed no title to it. And the plaintiff having shewn by Lee’s evidence, enough to give colour to his claim under Sims, the chancellor was correct in not dismissing his bill, until an opportunity was afforded him to make Sims’s representatives parties, and then to prove, if he could, by the record of the suit spoken of by Lee, that he was a creditor of Sims, and by other evidence, that he had a right to elect to take the land in question, in discharge of his claim. It might have been more regular to have made Sims’s representatives parties before; but a court of equity will not dismiss a hill for the want of parties only, especially in this case, in which the plaintiff could not be sure that his title under Sims would be controverted by the defendants.
The objections, that the claim upon Sims, accruing in 1800, ought to have been presumed paid in 1822, and to the title of the plaintiff under the deed of trust for the benefit of Sims’s creditors, the confidence in the trustees being personal, and not devolving on the heirs of the surviving trustee, from whom the plaintiff obtained his deed; are objections of the same character, and ought not to have been discussed until Sims’s heirs were made parties.
The other objections are of a different character and deserve more consideration.
The objection, that the purchase of the land, either by Sims from Morgan, or by the plaintiff from the trustees of Sims, was the purchase of a pretensed title, is not sustainable upon the facts in the case. At the time of the pur *254 chase by Sims of Morgan, there was no adverse possession of the land in question; and the purchase by the plaintiff of Sims’s equitable title, under its circumstances, was no violation of the letter or spirit of the act against the purchase of pretensed titles. That act imposes a penalty, but does not avoid the conveyance (Tabb v. Baird, 3 Call, 441.) even where the legal estate is conveyed; and cannot affect the conveyance of equitable rights. And, though equity will not enforce an equitable title, purchased by a party under circumstances, which if it were a legal title, would subject him to the penalty of the act against the purchase of pretensed titles, that is not the case before us. The plaintiff elected to take the land under the deed of trust, in discharge of a prior debt. He violated neither the letter nor the spirit of the act. The opinion of lord Eldon in Wood v. Griffith, is directly in point. There can be nothing clearer, I think, than that this objection to the decree of the chancellor has nothing in it.
Another objection was, that though there was a contract between Morgan and Sims, for the land, yet there is not such evidence of it, as equity will deem sufficient on a bill for specific execution, Sims never having been put into possession, and there being no written evidence of the terms of the contract, as to price &cc. If Morgan’s representatives were resisting this contract, I think this objection would be entitled to great weight. The title bond spoken of by Armistead from Morgan to Sims, ought to be produced, or its loss accounted for, and its contents proved. But the proof, I think, is full enough of the payment of the whole of the purchase money by Sims. Armistead swears, that Morgan put into his hands the patent and title bond to be delivered to Sims, in virtue of that contract. The insolvency of Sims, his death, and that of his trustees, and the lapse of so many years, might, with other circumstances, account for the non-production of the bond, even if Morgan’s representative was contesting the claim, and Sims’s representatives were also parties: but in the present state of the cause, the release of *255 the representative of Morgan to the plaintiff, must be considered a full acknowledgment of the contract alleged in the bill.
The last objection to the decree was, that the deed from the marshal to the defendants, in virtue of the sale for taxes, was pronounced to be invalid. It was admitted, that, by the decisions both of the supreme court of the U. States, and of this court, a purchaser claiming under these deeds, must shew that all the requirements of the act of congress have been complied with; but it was insisted, that after the lapse of twenty years, compliance with the requirements of the act may be presumed, though the party be unable to prove it. If such a presumption were applicable to a case like this, the defendants could not avail themselves of it. When they purchased the land under the sale for the nonpayment of the taxes, they had full notice of the rights of Morgan; indeed, the purchase was made, to evade the title of Morgan, and to fortify their own. They were put on their guard, and ought to have preserved all the documents and proofs of their title under the deed. When an officer acts under a naked power, and the property of others is to be affected by his acts, it must be shewn, that he has acted in pursuance of his authority to the very letter. In Williams v. Peyton, the deed of the marshal under this-same act of congress, was held not to be even primd facie evidence, that the requirements of the act, previous to the sale, had been complied with: and from the manner, in which the question is treated in that case, it is pretty clear, that the court would have permitted no other presumption, than such as would be received as to any other link in the chain of title to real property. [This the judge shewed, by several parts of the opinion, which he quoted.] Neither is it fairly inferrible, from any part of the opinion of the court in that case, that if presumption in such a case were admissible, it would be allowed on a shorter lapse of time, than is required to found such presumption, where any other link in. the chain of title to real property, may be presumed, in the absence of proof otherwise indispensible. And that h* a *256 case at law, where forfeitures may be strictly insisted on. But courts of equity rather favour presumptions to relieve forfeitures, than to sustain them. In the case of. Abraham v. Matthews, the presumption after the lapse of twenty years, thát a party bringing a slave into this state, had taken the oath before a magistrate, prescribed by statute, was allowed to save the forfeiture under the statute. Whether, in any case, a court of equity will allow presumption to sustain a forfeiture, where the party claims immediately under it, it is not necessary to decide. The case of Christy v. Minor, and other cases, in this court, concur in tire principle of Williams v. Peyton.
Upon tire whole, as the object of the decree was to preserve the equity of tire plaintiff under Sims, until it could be properly controverted by his representatives, the order that they be made parties was correct.
But I concur with judge Cabell, that the decree is wrong in the particular mentioned by him, and must for that cause be reversed.
The day after these opinions were delivered, the president mentioned, that the objection taken by the appellants, in their answer, that their twenty years possession was a bar to the assertion of the equitable right to the land claimed, by the bill, if it had been presented in the argument, had not been considered by the court; and that the point might now be argued.
It was spoken to accordingly. The case of Elmendorf v. Taylor, 10 Wheat. 152. was referred to; in which it was held, that twenty years adverse possession is a bar in chancery to the assertion of an equitable title, whenever it would bar an ejectment, if the plaintiff claimed the legal title. The principle was not contested: the only debate was, whether it was applicable to this case.
The president afterwards announced, that the court saw no reason to alter its decree. The reporter was afterwards, informed, that the court did not think it necessary, in the present state of the case, to decide the point.