# Broadnax *v*. Bradford & Co.

*Action on Promissory Notes and Accounts for Goods sold and delivered.*

1. *Bankruptcy; debts created by fraud of bankrupt, &c.; jurisdiction of court.* — "Debts created by the fraud or embezzlement of the bankrupt, or by his defalcation as a public officer, or while acting in any fiduciary character" (Bankrupt Law of 1867, § 33), are not affected by a discharge in bankruptcy, and are not within

[Broadnax v. Bradford.]

the exclusive jurisdiction of the bankrupt court. When the bankrupt's discharge is pleaded to an action on such a debt, it is a good replication that the debt was created by fraud, &c.; and the court in which the action is brought has jurisdiction to try the issue.

2. *Same; what constitutes fraud.*— False representations by the bankrupt, as to the pecuniary condition of the partnership of which he is a member, made with the intent to procure goods on credit, and by means of which goods were thus obtained, constitute a fraud within the meaning of the 33d section of the bankrupt act, and avoid his discharge as to the debt so created; but his representations as to the pecuniary circumstances of his copartner, though false, are not fraudulent, unless they were known by him to be false, or were made with the intent to deceive; and if his statements as to the pecuniary circumstances of his copartner were true, his failure to notify the creditor of an assignment subsequently made by said partner, would not constitute a fraud.

3. *Proof of fraud.*— On the issue of fraud *vel non* in the creation of a debt by a bankrupt, by false representations as to the pecuniary circumstances of his copartner and the partnership, whereby he procured goods on credit, the evidence of indebtedness must be confined to debts existing at the time the representations were made; but subsequent transactions, indicating antecedent indebtedness, would be competent evidence.

APPEAL from the Circuit Court of Greene.

Tried before the Hon. L. R. Smith.

This action was brought by Geo. P. Bradford & Co., suing as partners, against J. T. Broadnax and H. W. Broadnax, as late partners doing business under the name of J. T. Broadnax & Co.; and was founded on several promissory notes executed by the defendants to the plaintiffs, for goods sold on a credit, and on the accounts which were the consideration of the notes. The plaintiffs were wholesale merchants in New York city, and the defendants were doing business at Eutaw, in Greene county, Alabama. The debts were all contracted in August and September, 1866, and amounted in the aggregate to about $4,000. H. W. Broadnax made no defence to the suit, and judgment by *nil dicit* was entered against him, for $5,871.60, being the principal and interest of the debts sued on. J. T. Broadnax pleaded his discharge in bankruptcy, " in short by consent; " to which the plaintiffs replied, that the debt was created by the fraud of the said J. T. Broadnax, setting forth the facts constituting the alleged fraud. The allegations of fraud were, in substance, that said J. T. Broadnax represented to the plaintiffs directly, and through other persons to whom he referred them, that he and his partner were doing a flourishing business, and were worth $19,000 in goods, $10,000 in good accounts due to them, and about $13,000 in real estate, while their liabilities did not exceed $2,500; that these representations were wholly false, and were fraudulently made by said J. T. Broadnax, and that the plaintiffs sold their goods to the defendants on a credit on the faith of these representations. The defendant demurred to this replication, — 1st, because the facts stated were no answer to the plea of bankruptcy; and, 2d, because the bankrupt court had exclusive jurisdiction to try the issue

[Broadnax *v.* Bradford.]

presented by the replication.    The court overruled the demurrer, and issue was then joined on the replication.

On the trial, several exceptions were reserved by the defendant to rulings of the court on questions of evidence ; but, under the opinion of this court, these rulings require no special notice. The bill of exceptions purports to set out " substantially all the evidence," and states that the court thereupon charged the jury as follows : —

" 1. That if they believed the evidence, and believed that the defendant, whilst in New York in August or September, 1866, made application to plaintiffs to buy goods, and made certain representations to them, and afterwards (about the latter part of August, or the first of September) made application again to buy goods, and to have the debts of said firm extended, and made certain representations ; and that the plaintiffs believed said representations, and acted on them ; and that the same were material to the contract, and were untrue at the time they were made ; and that the plaintiffs would not have sold the goods but for the said representations, — then the defendant was liable in this action, although he may not have known that said representations were untrue ; and that it made no difference whether or not the defendant knew that Henry W. Broadnax was in debt at the time of said representations : if he was, the defendant was liable, although he might not have known of said indebtedness.

" 2. That if said representations that said Henry W. Broadnax was out of debt at the time were true, and said Henry W. Broadnax afterwards made an assignment of his property, on the faith of which plaintiffs' goods were sold, it was the duty of the defendant to notify his creditors of it ; and if he failed to do so in good faith, the defendant was liable.

" 3. That he who affirms what he knows to be false, or does not know to be true, to another's prejudice, and his own gain, is guilty of falsehood, both in morals and law, and must answer in damages.    So, in this case, if the jury believe, from the evidence, that the defendant represented to the plaintiffs any material fact, — such as, that he and his brother and copartner, H. W. Broadnax, were both out of debt ; and if H. W. Broadnax was indebted at that time ; and the plaintiffs, relying upon such statements, sold goods to the defendants, to their own prejudice ; then, in law, such statement was false and fraudulent ; and it makes no difference whether the defendant knew of such indebtedness, if he stated the fact as of his own knowledge."

To these charges the defendant excepted, and requested the court, in writing, to charge the jury as follows : —

" 1. If the representations made by the defendant were false

[Broadnax v. Bradford.]

in fact, and injurious because false, it is not a fraud on the part of the defendant, if he believed them to be true.

"2. In order to constitute fraud in this case, the representations must have been both false and fraudulent, and made with a dishonest intent to deceive and defraud plaintiffs.

"3. If the jury believe, from the evidence, that the facts and circumstances relied on to sustain the allegations of fraud are fairly susceptible of an honest intent on the part of the defendant, then the plaintiffs are not entitled to recover in this action."

The court refused these charges, and the defendant excepted; and he now assigns as error the overruling of his demurrer to the replication, the several adverse rulings of the court on the evidence, the charges given, and the refusal of the several charges asked.

W. COLEMAN and R. H. SMITH, for appellant.

R. CRAWFORD, contra.

B. F. SAFFOLD, J. — The 33d section of the bankrupt law of 1867 provides, that "no debts created by the fraud or embezzlement of the bankrupt, or by his defalcation as a public officer, or while acting in any fiduciary character, shall be discharged under this act; but the debt may be proved, and the dividend thereon shall be a payment on account of said debt." The classes of debts enumerated are put on the same footing of retention against the bankrupt. Their character is not ascertained by the bankrupt court, and therein reserved against him. They need not be presented, except for the dividend. They must come within the jurisdiction of other courts, because, when the bankrupt is discharged, and his estate is duly administered, the bankrupt court is done with him. His future accumulations of property are not subject to its jurisdiction. His accountability, and the means of enforcing it against his after-acquired possessions, remain, in respect to these debts, as if he had never gone into bankruptcy.

If the representations alleged were falsely made by J. T. Broadnax, with the intent to procure the goods, and he did thus obtain them, then, undoubtedly, the debt was created by his fraud. The plaintiffs, bringing their action in affirmance of the contract, are met with the plea, that this defendant has been discharged from the debt by the operation of the bankrupt law. They reply, that the debt was created by the fraud of the bankrupt, and from such it does not discharge. If the replication had been, that the debt was a fiduciary one, and it was clearly so, the force of the answer would be manifest. It is the indeterminable general character of fraud which confuses.

[Broadnax v. Bradford.]

In an action against a guardian, or trustee, the fiduciary character may appear from the complaint, but not necessarily, as in a suit by the beneficiary upon a note given in settlement of the trust. So, in the case of fraud, the right to recover is independent of it, without the bankrupt law; and the law which gives the plea, furnishes also the replication. This view of the question seems to be conclusively argued by the court in *Stewart* v. *Emerson*, New Hamp. R. June term, 1872, found in Amer. Law Record, Nov. 1873, p. 279. The demurrer to the replication was properly overruled.

The representations alleged to have been made by J. T. Broadnax are supported by the evidence in behalf of the plaintiffs. Broadnax, as a witness for himself, sustains them, except in the following particulars, which are essential: he denies that he made any representation of the individual indebtedness of himself or his partner, or that he claimed any interest in the real estate; and he says, he told the plaintiffs and others that the real estate belonged exclusively to his partner who was the capitalist of the firm. In respect to the falsity and fraud of any of the statements, it is proved that H. W. Broadnax owned the real estate attributed, and was reputed to be in good circumstances, and his firm of good credit, until the fall of 1867, which was after the creation of the debts sued for. But he was in debt several thousand dollars when J. T. Broadnax made his representations to the plaintiffs. J. T. Broadnax was cognizant of some of this indebtedness. The failure of the firm seems to have been owing chiefly to the individual indebtedness of H. W. Broadnax; for the payment and security of much of which, he conveyed his real estate, and mortgaged his personal property and the stock of goods of the firm on hand. J. T. Broadnax disclaims any knowledge of these conveyances until after his last interview with the plaintiffs. The partnership assets were greater in value than its liabilities, but they were ruinously sacrificed.

In application to the case, as above substantially stated, the court charged the jury, if they believed the evidence, and believed the defendant, J. T. Broadnax, made *certain representations* to the plaintiffs, upon the belief of which they sold the goods, and would not otherwise have done so, if the same were untrue at the time they were made, the said defendant was liable in this action, although he may not have known them to be untrue: and it made no difference whether the defendant knew or not that Henry W. Broadnax was in debt at the time of said representations; if he was in debt, the defendant was liable. This charge is confused. It does not specify the representations; and it was impossible for the jury to believe those attested by the plaintiffs, and those admitted

[Broadnax v. Bradford.]

by the defendant. They could not believe the defendant said H. W. Broadnax was not in debt, and that he said nothing about it: nor that he said the partners owned the real estate, and that H. W. Broadnax owned it individually. Again, the representations are not referred to H. W. Broadnax's indebtedness. The defendant was certainly not liable on account of it, if he said nothing concerning it to the plaintiffs.

The court further charged, that if said representations that H. W. Broadnax was out of debt at the time were true, and afterwards he made an assignment of his property on the faith of which the plaintiffs sold their goods, it was the duty of the defendant to notify his creditors of it; and if he failed to do so in good faith, he was liable. This charge is incorrect. The complaint of the plaintiffs is, that the defendant deceived them. A statement by him that his partner was out of debt, true in itself, involved no obligation to notify the plaintiffs of his subsequent embarrassment. What occurred after the debt was contracted, without inception before, or at the time, could not have *created* the debt.

The other charges to which exceptions were taken may be considered generally. The bankrupt law, being a national one, is best construed under the authorities of the U. S. supreme court. *Elmendorf* v. *Taylor*, 10 Wheat. 152. In *Lord* v. *Goddard* (13 Howard, 198), the plaintiffs in error were sued for recommending a firm as men well worthy of credit, and good for what they wished to purchase, whereas they were mere insolvent adventurers, without property, and entitled to no credit or confidence. The defendants knew nothing about them, but acted on information contained in a letter from Lord's son. The court said: " The gist of the action is fraud in the defendants, and damage to the plaintiff. Fraud means an intention to deceive. If there was no such intention; if the party honestly stated his own opinion, believing at the time that he stated the truth, he is not liable in this form of action (case), although the representation turned out to be entirely untrue." In *Marsh* v. *Falker* (40 N. Y. 562), the defendant was sued for telling the plaintiff, a merchant, that K. was perfectly good for $17,000 in property, and that if the plaintiff took K.'s note, he would discount it. K. had real estate worth between $10,000 and $20,000, but incumbered to its full value, and he was, in fact, wholly insolvent; but the defendant was not shown to have known the real condition of K.'s affairs, or that his own representations about them were untrue, and himself swore to the contrary. It was held, that an action against him on account of these representations, as fraudulent, could not be maintained.

These cases differ from the present one in this: the defend-

[Smith v. Speed.]

ants sought no advantage for themselves, and were not known to be in such relation with the persons recommended as would induce the plaintiff to believe they spoke from personal knowledge. But these points of difference do not affect the principle. They are circumstances of the intention. The doctrine of these cases is sustained in *Chandelor* v. *Lopus*, 1 Smith's Lead. Cas. 283; *Lord* v. *Colley*, 6 N. H. 99; *Williams* v. *Wood*, 14 Johns. 126, and numerous authorities cited in them. The Alabama authorities to the contrary may be defended on the principle, that when the representations are simply untrue, the party misled thereby has not assented to the contract, and, therefore, is entitled to a rescission, or he may recover damages, because the injury, whether intended or not, proceeds from the other party. The bankrupt law abrogates contracts on grounds of public policy. It seeks to restore to society and business a useful citizen, who has become hopelessly insolvent, and debars from its relief only those whose obligations are tainted with crime, or whose relation to others of trust and dependence it might tempt to crime. I doubt whether cases of constructive trust, not embracing dependence or inability of the beneficiary to protect himself, or some degree of turpitude of the trustee, should be included amongst the fiduciary debts against which the discharge is inoperative. This law, in releasing a debtor from his obligations, no matter with what degree of solemnity contracted, and without regard to its effects on the creditor, from considerations of public necessity alone, aimed to except from its benefits only those whose conduct deserved criminal prosecution. It was a measure of relief to the unfortunate, without encouragement of vice. We therefore think the intention to deceive is an essential element of the fraud.

The questions of evidence seem not to be difficult. Only such evidence of the indebtedness of H. W. Broadnax was admissible as tended to prove its existence at the time when the representations were made. Subsequent transactions of his, indicating antecedent liability, were competent.

The judgment is reversed, and the cause remanded.