Carr, J.

There were many points raised, and elaborately discussed, in the argument of this case at the bar. I think more than one of them justify the decree of the chancellor. I shall, however, rest my opinion, on the equitable bar of the statute of limitations alone.
General Washington’'s patent bears date the 30th October 1784, Whatever may have been the'irregularity of the proceedings previous to the grant, this court has decided, that it carried the legal title; M’Lean v. Tomlinson, 5 Munf. 220. and that question is not now before us. Neither is it material to inquire, what is the effect, in equity, of such irregularities, further than to say, that I do not think they amount to fraud. With respect to notice at the time of the survey, of the settlement of Cresap, I must say, in the first place, that the evidence is extremely slender, to prove that there ever was such a settlement. It depends mainly on the deposition of Tomlinson; and he comes in a most suspicious and questionable shape. From 1781 (when he agreed before the land commissioners with the Cresaps, to divide The Round Bottom between them) up to the year 1823, there seems to have been a contract, that the title to the whole bottom should be prosecuted at their joint expense, for their joint benefit. In 1823, this partnership was dissolved ; but though this step might restore his competency, it could not remove the bias which goes so strongly to his credit. But if we admit, that M. Cresap the elder did make a settlement, it is clear that colonel Crawford had no notice of it, and could have none; for he made the survey in 1771, and even Tomlinson tells us, that the settlement was not made till 1772. The actual notice, then, of a prior, equitable right, which this court has said makes a disturbance of that right fraudulent, does not belong to this case.
It was said, that the facts attending the survey shew, that it was a fraudulent proceeding, because the survey was postdated, and the warrants on which it was made, were issued after it bore date. I repeat, it does not seem to me that this was fraud; and, I think, this court, in deciding that the grant carried the legal title, said as much; for as these irre *389 gularities appear upon the face of the patent, they could be noticed as well at law as in equity, and fraud is as fatal in the one as the other forum, where it can be gotten at.
But suppose this was a fraud, it was known to the party, and in that case we know that the statute runs against him. Cresap’s patent was issued the 3rd February 1791. The parties had before had notice, by the caveat, that general Washington claimed this land by grant issued prior to 1785. The youngest son and child of M. Cresap the elder, and the plaintiff in this cause, was born in October 1775, and consequently came of age in October 1796. From that time to the filing of this bill, was twenty-six years. The land being in a state of nature, and wholly unoccupied, the possession accompanied the legal title. But more than this, in 1798-9, 'McLean, claiming under general Washington, went to the land, took actual possession, and placed tenants upon it. From this date to the filing of the bill, was twenty-three years. Will it be said, that the sort of possession by Cresap, taken in 1810, ’11, ’12, will prevent the bar? That was a trespass. The appellant knew that the legal title was against him,—that his only pretence of claim, was an equity, which could never be put in a course of decision by this proceeding. Indeed, the bill itself seems to consider this proceeding in pais, as not affecting the possession; for it says, in so many words, that McLean, finding the land unoccupied, took possession, and still holds it, and availing himself of his elder grant, insists on retaining possession, in exclusion of the plaintiff’s rights. Here is, then, twenty-three years of actual adversary possession, without any thing to take the case out of the statute; which is expressly relied on in the answer, I cited in Carr v. Chapman (ante, p. 171.) many cases as to the effect of time; but these were not as to the equitable bar of the statute. The law is equally well settled on this point. 3 P. Wms. 287. Bond v. Hopkins, 1 Sch. & Lef. 413. Hoveden v. Ld. Annesley, 2 Id. 607. 632. Ld. Cholmondeley v. Ld. Clinton, 2 Jac. & Walk. 138. This last was a great case, and most elaborately examined. The master of the rolls, held, that both on principle and authority, *390 the laches and non-claim of the rightful owner of an equitahie estate, for a period of twenty years, (supposing it the case of one who must, within that period, have made his claim bi a court of law, had it been a legal estate), under no disability, and where there has been no fraud, will constitute a bar to the equitable relief, by analogy to the statute of limitations, if during all that period, the possession has been held under a claim unequivocally adverse, and without any thing having been done or said, directly or indirectly, to recognize the title 'of such rightful owner by the adverse possessor. It will be observed, that this is most strongly put; it was a case of no doubtful claim, but the rightful owner of an equitable estate was thus barred. The case went to the house of lords, and was affirmed, both lord Eldon, and lord Redesdale stating it as settled law, that, in a case of actual adverse possession, twenty years constitutes a bar. The last I shall notice is Elmendorf v. Taylor, 10 Wheat. 152. where twenty-one years had elapsed: chief justice Marshall examined the subject and the cases, with great clearness and force; and the decree of the court, on this point, is thus expressed—“ And this court is further of opinion, that in cases of adversary title, such an adversary possession as would bar an ejectment (did the plaintiff possess the legal title) constitutes also a bar to a bill in equity.” I think the decree should be affirmed.
Brockenbrough, J. concurred.
Cabell, J
This is a bill filed in the year 1823, to set aside a grant which issued in 1784. The grantee had, from 1784 to 1798, that legal seizin which the commonwealth’s grant confers; and in 1798, his vendee took actual possession of the land, which he has held ever since; except that, in the year 1810, the appellant acquired the possession of part, by trespass, and held it for that and the two succeeding years.
If this were an ejectment, I am not prepared to say, that the possession of Cresap, though acquired by trespass, and *391 held for so short a time, would not have prevented the application, in a court of law, of the statute of limitations. And, as the plea of the statute is not more efficient in equity than at law, 1 cannot say, that it could have been successfully relied upon, as a bar to this bill.
But the doctrine of the equitable bar of the statute of limitations, is materially different from that bar which courts of equity oppose to stale demands, after great laches and long acquiescence. In the former case, nothing less than twenty years adversary possession will suffice. But, (as was said in argument, in the case of Cholmondeley v. Clinton, 2 Mer. 302.) as to acquiescence, the court has no fixed time. It judges from circumstances and convenience; and therefore, in some instances, a less period than twenty years has been held to bar. I am perfectly satisfied of the correctness of this remark. The cases of Swanton v. Raven, 3 Atk. 105. Stockley v. Stockley, 1 Ves. & Beam. 23. and many others, aflbrd instances where this distinction has been acted on. I have seen very few cases, if any, which more imperiously-required its application, than the present. It would be mischievous in the extreme, after thirty years of acquiescence (during the greater part of which time, the party was under no disability) to set aside a solemn grant on vague, doubtful and uncertain parol testimony, relating to transactions which occurred fifty years before the institution of the suit, and long after the death of all those capable of explaining them. On this ground, without considering any other, I am clearly of opinion, that the decree should be affirmed.
Decree affirmed.