Carr, J.
The bill was filed to obtain a conveyance of 45 acres of land, and payment of the purchase money of 29 acres. The claim is founded on a contract charged to have been made between the plaintiff and the defendant’s father, Charles Lewis, in the year 1774, and recognized, and partly executed, by the defendant in 1798. Without discussing the evidence, I will say, that the contract with Charles Lewis is clearly proved by two unimpeached witnesses, nor is there any countervailing testimony. Several *689 objections were made to this contract. We will examine them.
The statute of frauds was relied on in the answer, but abandoned in the argument, and properly, for it was not a law until 1787'.
It was insisted, that the contract was a nudum, pactum, and such as equity never executes. What are the facts? Charles Lewis had a sirrvey in Greenbrier, for 350 acres, made under The Greenbrier Company, in 1769. In the spring of 1774, he went to the county, with the purpose of taking up more land under the company, on Culbertson’s creek, including a place called the Lick. He found die plaintiff in the actual possession of a parcel of land adjoining the Lick, and constituting a part, of what he wished to include in his Lick survey. This land the plaintiff had settled, by clearing and building a cabin in which he then resided; upon the ground of which settlement he claimed and held the land. Of the value of this.claim, Lewis could judge, probably much better than the plaintiff. He had to decide for himself, whether it was safest and best to make his survey taking in this land, with Williams's claim unsettled, or to put it out of his way, by a contract with the claimant. He chose this latter course. He proposed to give the plaintiff for his claim as good a plantation off the northwest end of his own Block Camp survey. The plaintiff agreed to the proposal; gave up the land he held, which Lewis included in his Lick survey; and was directed to take possession, and did take possession, of the northwest end of the Block Camp survey, which he has held ever since. How can it be said that this was a nudum pactum? The parties, assuredly, did not so understand it. There was no concealment, no misrepresentation; are we at liberty now, to speculate upon the positive or comparative value of these claims, and upon this speculation (unavoidably influenced by subsequent events, and subsequent legislation and adjudication) to disturb this contract ? or to say that we will not execute it ? I think not. The parties came fairly together; dealt with each other at arm’s length: each gave a mere *690 claim which might turn out something or nothing; the one his settlement, the other a part of his survey; and this very survey thought of so little value, even in 1798, that the defendant preferred to abandon it, and enter the land under a treasury warrant.
But this contract is good upon another ground : it is the settlement and compromise of a doubtful right. The ancestor of the defendant was about to take up this land; there was a claim upon it; he thought it better to buy out this claim, than test its strength by a law suit; and it is well established, that the compromise of a disputed title is not only a valuable but a favored consideration; Moore v. Fitzwater, 2 Rand. 442. where this subject is well treated by my brother Cabell, delivering the opinion of the court, and shewing by the highest and strongest authorities, that the law is settled. The original contract then is good and valid.
Charles Lewis died; the defendant, his son, was (we are told) his devisee as to these land claims. In 1796, he contracted to sell the Block Camp land to Maze; and in 1798, he came to the neighbourhood to settle the business. He found the plaintiff in possession of the land at the northwest end of the Block Camp survey, claiming under the contract made with his father; and though the defendant, in his answer, denies that he admitted the existence of such a contract, it is clearly proved, both by witnesses, and the defendant’s own surveys made in March 1798, that he not only recognized it, but took decisive steps towards executing it. The claim to the Block Camp tract still stood on the old survey made under The Greenbrier Company. It was thought best to abandon this, and to enter and survey the land under treasuiy warrants. The whole tract had been sold to Maze; but the claim of Williams stood in the way. If it had been intended to disregard this claim, there would have been but one entry and survey; but how did the defendant proceed ? He came to the conclusion, that the claim of Williams amounted to 74 acres; but Williams was willing that 29 acres of this should be conveyed to Maze, the purchase money to be paid to him by Lewis *691 when he should receive it. Lewis, therefore, had three cntries and surveys made on the tract; one in the name of 'Williams for 45 acres; another also in Williams's name for 29 acres; and a third with a blank for the name, but containing the land, which was to be passed to Maze including the 29 acres. These entries and surveys are expressly proved to have been made by the directions of the defendant, for the very purpose of marking out the claim of the plaintiff: and in the third survey the 45 acre tract is called for as “ a survey made for Richard WilliamsP Of this land Williams was then in possession, and has ever since continued in possession. Thus, it is clear to me, that the defendant admitted the contract with his father to be binding, and executed it, in every thing but the conveyance of the legal title. The plaintiff might himself have proceeded to get the patent for the 45 acres; but he did not; and, subsequently (at wha.t precise time does not appear), the defendant, again changing his mind, abandoned the last entries and surveys, and took out a patent to himself upon the old survey under The Greenbrier Company for the whole tract. This suit is brought to compel a conveyance of the 45 acres, and a payment of the purchase money for the 29 acres, which is stated to be £ 29. the sale to Maze being at 20s. per acre.
The statute of limitations is relied on by the defendant. As to the demand for the land, T am clearly of opinion, that the statute is no bar; because the plaintiff has always remained in possession claiming the land, and because from the moment the defendant obtained the grant, he held the 45 acres directly in trust for the plaintiff. These features take the case out of the principle decided in Elmendorf v. Taylor, 10 Wheat. 152. and that class of cases.
But with respect to the claim for the money, the case, I think, is different. It was admitted, that there was no such trust there, as would avoid the bar of the statute; nor was there any continued possession. We do not know, exactly, when the money was paid by Maze to Lewis; but the transaction is a stale one. Maze bought in 1796: the bill *692 states, that the deed was made to him in 1801. Upon this state of facts, the defendant pleads the statute; that is, that the claim did not accrue within five years. The plaintiff’s replication is, that it did; and this he has failed to shew us. I think then, that, as to the money, the statute is a bar.
Cabell, J.
As to the 45 acres of land sought to be recovered by the bill, I concur in the opinion delivered by my brother Carr, and I have nothing to add to the reasons which he has assigned.
As to the money claimed by the bill, it is manifest, from the testimony, that that also was, originally, a just claim; but, I think, it is barred by the statute of limitations. The transaction, out of which this claim arose, was, in spine sense, a trust. But it is not true, that every case, even of direct and express trust, is withdrawn from the operation of the statute. The most that can be said of this case is, that Lciois was Williams’s confidential agent or attorney in fact for selling land and applying the money to his use. But this involves no more of trust and confidence, than is involved in the case of every attorney at law, employed to collect and receive money for his client; and this court decided, in the case of Kinney’s ex’ors v. M’Clure, 1 Rand. 284. that an attorney at law is entitled to the protection of the statute of limitations. In that case, Mr. Johnson said, that an attorney cannot be considered a trustee; because the proper remedy against him, is an action on the case, or a motion under the statute, and not a bill in equity to enforce the trust. I take this to be the true ground of distinction between those trusts which are, and those which are not, exempted from the operation of the statute. Indeed, I understand Mr. Johnson, in his argument of the case before us, as endeavouring to repel the bar of the statute, not on the ground of trust, but on the ground that it does not appear when the money was received. But the affirmative of the issue is with his client. It is for him to prove that the cause of action arose within five years, which he has not done.
*693 I am of opinion, that the decree should be reversed as to the 45 acres of land, with costs, and affirmed as to the residue.
Tcckee, P.
I am of opinion, that the contract set up by the plaintiff in his bill, is clearly made out by the evidence. An examination of it cannot be necessary,s as it is full and undeniable. It is only necessary to inquire into the validity of the defences which have been set up in bar of its performance.
It is first alleged, that the contract was a nudum, pactum. In answer to this, I shall only remark, in addition to the strong observations of judge Carr on the subject, that the surrender of Williams’s possession has every characteristic of a valuable consideration. He gave up that which was valuable to him: his home, his cabin, his fireside,—his settlement and improvement, which if made, as he alleges, under The Greenbrier Company, gave him an inchoate title to the lands upon the conditions on which the company’s lands were disposed of. He gave up what was valuable to Lewis: for the little settlement of Williams was in the way of his acquisitions, and his agreement to exchange part of the Block Camp survey for Williams’s settlement, strongly countenances the allegation of the bill, that Williams had made that settlement under The Greenbrier Company, and that Lewis was well aware he could not disturb him. Moreover, by the acquisition of Williams’s settlement, he at least was at once invested with the means of acquiring title from the company, if he chose to do so. It does not, therefore, become him or those who claim under him, after the lapse of sixty years, to call in question that consideration, which he deemed adequate to the property he agreed to give in return for it.
Still less does it become him or them, to set up the defence of the length of time in bar of this equitable title. It is not admissible on the part of a vendor against his vendee. The relation in which they stand to each other forbids it. The former is a trustee for the latter; and the trust can never be *694 determined but by a conveyance of the title. The vendor can never be permitted to set up his own omission to make a deed, against the right of the vendee to demand one. Yet less can he invoke the aid of those cases, which discountenance the assertion of a stale equity, by a party out of possession, against an adversary claimant in possession. For here, Williams has been in continued and uninterrupted possession from about the year 1774, to the present day; in the peaceful enjoyment of this equitable right, which has thus acquired strength by lapse of time and acquiescence, instead of being weakened and impaired. If, indeed, we could look upon the parties in the light of adverse claimants, Williams’s possession alone would sustain him in a writ of right. But as he is in fact a claimant under Lewis, he could not at law be permitted to defend himself, as an adverse claimant, by the statute of limitations. It is, then, but just, that, in this court, the same relation should protect him from a similar defeuce on the part of Lewis.
The defence of the statute of frauds has been properly abandoned in the argument, as that statute was not in force when the original contract of 1774 was made. Indeed, if it had been, the proof of part execution is abundant, and would have taken the case out of its operation.
As to the alleged purchase by Maze of this pretended title, I do not conceive it to be a matter in issue in the case. There is no allusion to it in the bill, nor is there any charge of it in the answer, although there is an insinuation, that this suit has been stirred up by Maze. If so, he is liable to the penalties of the law for maintenance and champerty.
With respect to the money demand, however, I am of opinion, that the claim is barred by the statute of limitations. If the money was received from Maze, within any reasonable time after he received his deed in 1801, the bar of the statute must be complete: and although that matter is left in a state of uncertainty, yet this is the fault of the plaintiff. .It behooved him to shew, in reply to the bar of the statute, that the cause of action accrued within five years. This is the established course of pleading and proof, *695 in a court of law, and is equally so in a court of equity. The defendant at law pleads, negatively, that he did not promise, or actio non accrevit, within five years; and the plaintiff replies affirmatively, that he did promise, or that the action did accrue within five years. And, as he is held to prove a valid and subsisting cause of action, the onus probandi, upon the trial of this issue, is upon himself and not upon his adversary.
I am, therefore, of opinion that the decree be affirmed as to the money demand, and reversed as to the claim of title to the 45 acres; and that a decree be entered for a conveyance of that tract to the plaintiff Williams.
Decree reversed.