## R. B. POWELL AND OTHERS v. JEROME DE BLANE.

The construction placed upon the statute of another state, by its judicial tribunals, is received by this court as the rule of decision, to determine the rights of parties under such a statute; although it may be contrary to the construction placed upon our own statutes on the same subject.

We hold it to be indisputable, that the judicial tribunals of every state are the sole expositors of its local laws; and that the decisions of its courts upon the construction of those laws, is binding upon all other courts, in deciding upon rights of property, and of action, depending upon those laws.

The only recognized qualification of this doctrine, is the principle of international law, that no state is bound to give effect, within its territory, to the laws of any other state or government; where, to do so, would be to contravene its own policy and laws, or to affect injuriously the rights of its own citizens.

Under the construction given by the courts of Mississippi to the second and fourth sections of a statute of that state, of the 15th February, 1839, (Hutch. Dig. 496, 497,) *held*, that, where a man marries a woman in that state owning slaves, and the wife dies, leaving no children of such marriage, the surviving husband is entitled to the said slaves. Upon the marriage, the husband acquires a right of property in the slaves, which becomes absolute at her death. Such right is not affected by the removal of the husband and wife to, and the death of the latter, in a state by the laws of which, the property would descend to the parents or brothers and sisters of the deceased.

APPEAL from Liberty. Tried below before the Hon. P. W. Gray.

This action was brought by the appellants, as heirs and distributees of the estate of Martha A. Marble, who died intestate in the state of Louisiana, leaving a husband, Reynolds D. Marble, but no children. The said Martha, at the time of her marriage, in Yazoo county, Mississippi, in 1851, was the owner, in her own right, of a number of slaves. In 1854, the said Marble and his wife, with her slaves, moved to the state of Louisiana, where she died in 1855. Marble, the surviving husband, removed with the slaves to Texas, where he sold some or all of them, and to recover one of them from the appellee, who had purchased, and was in possession of him, this action was instituted by the appellants; averring that they were, according

to the laws of Louisiana, where the said Martha was domiciled, at the time of her death, entitled to recover the said slave.

On the trial of the cause, the facts that the said Martha, at the time of her intermarriage with the said R. D. Marble, was owner in her own separate right, of a number of slaves (the one in controversy included,) the residence of the parties at the time being in the State of Mississippi; their removal to the State of Louisiana; her death without leaving children; the survivorship of her husband; and that the plaintiffs were the mother, brother, and sisters of the said Martha; and also the law of Louisiana regulating marital rights, and of descents and distributions, were all proved or admitted, as was also the statute of Mississippi passed in 1839, which is quoted in the opinion.

By the laws of Louisiana, given in evidence, the estate of a wife, which was owned by her before marriage, descends to her children, or their descendants, if there are such at her death; if there are no such, then the estate passes to her father and mother, in equal portions, if they are both living, or if either of them is dead, then one-half passes to the surviving father or mother, and the other half to her brothers and sisters, or their descendants.

The court charged the jury, that, "by the laws of Mississippi, in evidence, the property of which the wife was possessed in slaves, at the time of her marriage, remained her separate estate, free from the debts of the husband, and not subject to sale by him, without her consent, but subject to his control and management; and in the event of the wife's death, leaving no children of the marriage, the property being slaves, descends to the husband and his heirs. When parties marry in one state and subsequently thereto they remove to another, with the property owned at the time of the marriage, and the laws of the latter state are different from those of the former, in regulating the rights of the parties, the question is, by which law are those rights to be decided in the event of the death of either party in the latter state. The law of Mississippi of 1839, was a modification of the rule of the common law previously in force there,

as proved; the provisions of this law became a part of the marriage contract, and the right to the slaves of the wife in the event of her death, without children, vested in her husband. Though contingent on that event, yet it was a vested right, which was not changed or lost by a change of domicile. Even in Louisiana, the law of the matrimonial domicil would be held to govern property acquired prior to the removal there, as a general rule. In our courts, where no injury could ensue to our citizens, the same rule should be enforced. The rights of the parties are to be decided according to the laws of Mississippi."

The jury returned a verdict for the defendant, and the plaintiff appealed to this court.

*L. A. Thompson*, for the appellants.—It is apparent that the principal question in the case is, whether, or not, the succession, or distribution, of the slaves of which Mrs. Marble died possessed, is to be regulated and controlled by the law of Louisiana, the place of her domicil at the time of her death. The judge of the court below held, that the law of Mississippi, which was the law of the matrimonial contract and domicil, at the time of the marriage, should govern the distribution.

That the judge of the District Court erred in this view of the subject, and in the instruction given to the jury, does not admit of a doubt. Although it is true, that the law of the place of the matrimonial contract would govern property there acquired prior to the removal of the parties to another state, that is to say,—if by the law of the place of the matrimonial contract, the property which the wife owned prior to the marriage, remained her separate property afterwards, it would be unaffected by the subsequent removal of the parties to another state, but would there continue to be her separate property,—yet it does not therefore follow, that upon the dissolution of the marriage by the death of the wife, the law of the place of the matrimonial contract would prevail over the law of the domicil of the parties, as to the rights of those entitled to the succession or distribution of the personalty of the deceased.

The title to the property, undoubtedly, was vested in Mrs. Marble, in Louisiana, after the removal, as fully and as perfectly as it had been and was in Mississippi, prior to such removal; and if the parties had continued domiciled in the latter state up to, and at the time of Mrs. Marble's death, it would have been distributed according to the law of that state. But the removal and subsequent domiciliation of the parties changes the rule of the succession.

He cited Sill v. Worswick, 1 H. Bl. Rep. 690; Doe d. Birtwhistle v. Vardill, 5 Barn. & Cres. Rep. 438, 451, 452; s. c. 6 Bligh's Rep. 32, 88; 2 Clark & Fin. Rep. 571; Conflict of Laws §§ 481, 482, a., and cases there cited; 4 Burge, Com. on Col. & For. Law, 156, 170; Id. 158; 2 Kent, Com. 429–432; citing Dixon v. Ramsay, 3 Cranch, 319; Kerr v. Moon, 9 Wheat. 566; Desesbats v. Berquier, 1 Binney, 336; Decouche v. Savetier, 3 Johns. Ch. Rep. 210; Holmes v. Remsen, 4 Johns. Ch. Rep. 469, 470; Harvey v. Richards, 1 Mason, 408; Stent v. McLeod, 2 McCord's Ch. Rep. 354; Leake v. Gilchrist, 2 Dev. Rep. 73; Penny v. Christmas, 7 Rob. La. Rep. 481; Succession of Packwood, 9 Id. 438; s. c. 12 Id. 334; Marcenaro v. Bertoli, 2 Ann. Rep. 980; Garland v. Rowan, 2 Sm. & Marsh. Rep. 617, overruling the prior case of Duncan v. Dick, Walker's Rep. 281.

But it will be argued, that this case is taken out of the general rule by the peculiarity of the provisions of the Mississippi Act of 1839. The judge of the court below held, and so instructed the jury, that by the provisions of the law of Mississippi, the right to the slaves of the wife, in the event of her death without children, *vested* in her husband; and he adds, "though *contingent* upon that event, yet it was a *vested* right, not changed or lost, by a change of domicil."

It is difficult, if indeed it be possible, to see how a right can be both *vested* and *contingent* at the same time. In correct law language, they are correlatives. That is vested which is fixed, and not in a state of contingency or suspension. As for instance, a vested remainder is where the estate is invariably fixed to re-

main to a determinate person after the particular estate is spent; in such case, a present interest passes to the party, though to be enjoyed *in futuro ;* and that is *contingent* which depends on an uncertainty; as in the present case, whether or not, the wife dies leaving children. For suppose a deed of settlement executed limiting the separate property of the wife to herself for life, remainder in fee, or absolutely, to the issue of the marriage *not in esse,* and in default of such children, to the husband in fee, or absolutely; here the remainder over to the husband would be contingent, during the entire existence of the coverture, for until the wife dies, the possibility of her having children continues, and the event is uncertain. The estate is not invariably fixed to remain to a determinate person. The intervention of the remainder to the children not *in esse* being absolute to them, would make it a mere contingent or executory right, liable to be wholly defeated by the birth of a child during the coverture, and the death of the wife leaving such child surviving. For the distinction between vested and contingent remainders, see Crabb on Real Property, §§ 2329–33. (See also Clarke v. McCreary, 12 Sm. & Marsh. 347.)

Whatever pretensions the husband may set up during the coverture, to the separate property of the wife after her death, under the act of 1839, can only be contingent in its character. Give it the utmost force which it seems to be susceptible of, and it is but a *spes successionis,* a contingent expectation to be her heir and distributee, in default of children of the marriage, to have the succession and descent as to her estate in the slaves cast upon him, for such is the language of the statute, and it cannot, without violence, be made to mean anything else. In case there shall be no child born of the marriage, living at the death of the wife, then such slaves "shall descend and go to the husband and his heirs."

That it cannot fairly and legally be considered as *vested* in interest, or as a limitation of estate, is plain. Suppose the husband should die, and then the wife die leaving no children of the marriage, would the husband's heirs take upon the death of

the wife to the exclusion of her heirs? If it be a limitation tacitly created by the law upon the celebration of the marriage contract, vested in interest, they would take; and thus the legislative declaration in the second section of the act, that her separate property should *continue to her, notwithstanding* her coverture, would be defeated. If, however, it be considered, as we contend it should be, as a rule of descent and distribution only, then they would take nothing, but the property would go to the heir or distributee of the wife, and the rule declared in the second section would be preserved.

If it be urged, to support the opposite claim, that the law gives to the husband the control and management of the wife's separate property, and prevents any disposition of it by her, except with his consent, and his joining in the act of disposition, it is answered, by saying, that this only continued during the domicil of the parties in Mississippi, and had no operation or effect after the removal and domiciliation of the parties in Louisiana.

Questions of personal incapacity, in cases of minority, coverture and others, are governed by the laws of the actual domicile at the time when any dealing with the property is attempted, and not by that of the contracts of acquisition. (Story, Confl., §§ 66, 69, 101, 102, 136, 141.)

In Louisiana, for aught that appears, the wife might have aliened by her sole act, or she might have disposed of the property by testament, and so have defeated this contingent expectaton,—this *spes successionis.*

The Mississippi Act, of 1839, was incidentally considered by the Court of Appeals of that state, in Fowler v. Kell, and our view of that act supported in *a dictum* of the court. (14 Sm. & Marsh. Rep. 68.)

The opposite side, however, will rely on a subsequent case decided by the Court of Errors and Appeals, of Mississippi; it is that of Lyon v. Knott. This case holds, that although the children of the marriage surviving the wife, would, under the 4th section of the act of 1839, take only by descent, yet that the husband takes upon the marriage, under the same section, a vested right

or interest to the slaves of the wife upon her death, without children. The opinion, however, is so inconclusive and unsatisfactory in its reasons, that it is entitled to but little, if any weight.

In construing the act of 1839, by the old law, the mischief and the remedy, the court concludes that the law was designed, and operated only, to suspend the marital right of the husband during coverture, to be re-asserted when it is determined by the death of the wife without issue of the marriage. This conclusion is contrary to the plain language of the law of 1839, as well as its spirit. By the 2d section of the act of 1839, her property owned before marriage, is " to *continue separate notwithstanding the coverture,*" &c. How can this language be reconciled with the conclusion of the court ? How can the property of the wife continue separate notwithstanding the marriage, if the husband can, at any time thereafter, exercise the *jus mariti* over it ?

The slaves of the wife forming her separate property by the 4th section of the act of 1839, upon her decease, descend to the issue of the marriage, and failing any such, descend to the husband. The children of the marriage, says the court, take by descent; but the husband takes a vested interest upon the marriage. Why this distinction? The statute says the property shall be cast by descent in both cases. No reason is shown for the distinction, at all satisfactory. The analogy which the learned judge attempts to trace between the provisions of the statute, and the limitations in a deed which create a remainder vested in interest, though to be enjoyed *in futuro,* is a failure.

If these provisions had been inserted as limitations in a deed, the remainder would have been contingent. It is not invariably fixed to remain to a determinate person, after the particular estate is exhausted. The first limitation is to persons not *in esse,* and is of the absolute property in the slaves, and failing them, then to the husband and his heirs. (See Crabb on Real Prop. §§ 2329–33, before cited.)

The question being one of conflict of laws of the state of

Louisiana, the domicil of the parties at the time of the death of Mrs. Marble, and the *situs* of the property, and that of Mississippi, which is the place of the contract of the marriage, it seems to us important to look at the view which the courts of Louisiana take of the effect of a change of domicil, even on community property acquired in that state. (See cases before cited; Penny v. Christmas, 7 Rob. Rep. 481; Succession of Packwood, 9 Rob. Rep. 438; 12 Id. 334.)

Upon a full review of the case of Lyon v. Knott, it seems to us, it will be found to be so illogical and inconclusive, that this court will undertake for itself to examine and construe the act of 1839, and to settle its true interpretation; and in such event, we feel well assured, that nothing will be found to take the present case out of the general rule, that the *lex domicilii* should govern the succession, and that we are entitled to a judgment of reversal.

*J. W. Henderson,* also for the appellants.

*B. C. Franklin,* for the appellee.

*Perkins,* also for the appellee.

WHEELER, C. J.—The slave here in controversy was the property of Mrs. Marble, prior to her marriage in Mississippi, in 1851. Mrs. Marble removed with her husband to Louisiana, in 1854, where she died. If the slave continued her separate property after her marriage, in Mississippi, her right of property was unaffected by her change of domicil, and the plaintiffs were entitled to the property by succession, according to the law of Louisiana. For it is the universally admitted doctrine, that the disposition, succession and distribution of personal property, is governed by the law of the country of the owner's or intestate's domicil at the time of his death. (La. Civil Code, art. 935; 2 Kent's Com. 428; Story's Confl. Laws, § 481; Penny v. Christmas, 7 Rob. La. Rep. 481; Succession of Packwood, 9 Id. 438.)

The question therefore is, whether, upon the marriage of Mrs.

6

Marble in Mississippi, the slave continued her separate property, or became the property of her husband, *jus mariti*, by the law of that state. If the question were to be determined by the letter of the statute law of Mississippi, in force at the time of the celebration of the marriage, there could be, it would seem, but one opinion. By statute of the 15th of February, 1839, sec. 2, (Hutch. Dig. 496, 497,) it is enacted, "that hereafter when a woman possessed of a property in slaves shall marry, her property in such slaves shall continue to her, notwithstanding her coverture, and she shall have, hold and possess the same as her separate property, exempt from any liability for the debts or contracts of her husband." And the fourth section of the act provides the rule of descent and distribution upon the death of the wife, thus: "Such slaves shall descend and go to the children of her and her husband jointly begotten, and in case there shall · be no child born to the wife during such her coverture, then such slaves shall descend and go to the husband and to his heirs."

The plain meaning of the statute would seem to be, that the wife's property in the slaves which she owned before the marriage, continued hers after the marriage, to the exclusion of the marital right of property of the husband; and upon her death without children born of the marriage, the property would go to the next of kin of the wife, according to the laws of descent and succession. In that case, as we have seen, the plaintiffs would be entitled to the property.

But the statute has received a different interpretation by the Court of Appeals in Mississippi, in the case of Lyon v. Knott, 26 Miss. Rep. 548. That was a bill filed in the Superior Court of Chancery in Mississippi, by Knott and his wife, to recover of Lyon certain slaves, claimed by Mrs. Knott under the laws of descent and distribution of that state. The bill alleged that the defendant Lyon, intermarried with Mrs. Speed in Mississippi, in 1844. Mrs. Speed, at the time of her marriage, was the owner of the slaves in controversy. After the marriage, Lyon and his wife removed to Texas, where they became domiciled and continued to reside until the death of Mrs. Lyon, in 1847. Mrs.

Lyon died intestate and without issue, leaving no brother and an only sister, the complainant, who, as next of kin, under the law of Texas, was entitled to the slaves belonging to her succession, as sole distributee and in exclusion of her husband Lyon. After the death of his wife, Lyon, with the fraudulent intent, as it was alleged, of defeating the rights of the complainants, secretly removed the slaves from Texas into Mississippi, where he had sold a part of them and was in possession of the remainder.    There was a demurrer to the bill which was overruled, and an appeal taken.    The Court of Appeals reversed the judgment and dismissed the bill; holding that by virtue of the marriage in Mississippi, notwithstanding the statute, the husband acquired a vested right of property in the slaves; contingent, nevertheless, and subject to be defeated by the birth of children, but absolute upon the death of the wife, without issue of the marriage.    The case appears to have been considered and decided upon re-argument, and a review of the cases previously decided in that court, supposed to have proceeded upon a different view of the statute. And again, two years later, in Walton v. Olive, 29 Miss. Rep. 270, the court, after full argument, reaffirmed their decision in Lyon v. Knott.    That decision, therefore, must be considered as the established construction of the statute in the courts of the state where it was enacted; and the settled law of the matrimonial domicil of the party from whom the plaintiffs claim to have derived their title.    As that is the law of the nuptial contract, upon which the rights of the parties in this case depend, however contrary to the construction placed by this court upon our own statutes upon the same subject, and however unsatisfactory the grounds upon which the court rested its decision may appear; whatever our own opinion upon the true meaning of the statute might be, we feel constrained to receive the construction placed upon it by the courts in Mississippi, as furnishing the rule of decision to determine the rights of the parties in this case.

We hold it to be indisputable, that the judicial tribunals of every state are the sole expositors of its local laws, and that the decisions of its courts upon the construction of those laws is

binding upon all other courts, in deciding upon rights of pro-. perty, and of action depending upon those laws. (Shelton v. Marshall, 16 Texas Rep. 344.) The only recognized qualifica- tion of this doctrine, is the principle of international law, that no state is bound to give effect, within its territory, to the laws of any other state or government, where to do so, would be to contravene its own policy and laws, or to affect injuriously the rights of its own citizens. If we would not recognize the au- thority of any other court to construe for us the laws of this state, we must accord the same right which we claim for our- selves to the courts of other states.

No doctrine can be more obviously rational and just than that the courts of every government have the exclusive authority of construing its local statutes, and their construction will be re- spected in every other country. Adverting to this principle, in Elmendorf v. Taylor, (10 Wheat. Rep. 152,) Chief Justice MARSHALL said : " No court in the universe, which professed to be governed by principle, would, we presume, undertake to say, that the courts of Great Britain or France, or of any other nation, had misunderstood their own statutes, and therefore erect itself into a tribunal to correct such misunderstanding. We receive the construction given by the courts of the nation as the true sense of the law, and feel ourselves no more at liberty to depart from that construction than to depart from the words of the statute." (Ibid. 159, 160.)

Since by the law of Mississippi, upon the marriage of Mrs. Marble, her husband acquired a right of property in the slave in controversy, which became absolute upon her death, it follows, that the plaintiffs did not acquire a right to the property, by succession, as her next of kin, by the law of Louisiana; and they are not entitled to recover in this action. There is there- fore no error in the judgment, and it is affirmed.

Judgment affirmed.