A. R. McNAIR *et als.*, Appellants, *v.* MICHAEL LOT *et als.*, Respondents.

*Limitations—Mortgage.*—Actual possession of the mortgaged premises by the mortgagee continued for twenty years, without any payment of interest to the mortgagor, or any thing done or said to recognize the mortgage as an existing encumbrance, will bar the equity of redemption. The rule applies with still greater force where the possession is by a stranger to the mortgage.

*Appeal from St. Louis Circuit Court.*

This case was before the court, 25 Mo. 182. After it went back to the St. Louis Land Court, the venue was changed to the Circuit Court. The petition set forth a cause of action in the nature of a bill to redeem the mortgages, and also added a count in ejectment against all the defendants. There were four suits against different persons, claiming to own different lots in the addition into which the twenty arpent tract had been divided; the different defendants, claiming their lots in severalty, answered, denying the rights of the

19—VOL. XXXIV.

plaintiffs, claiming that they had title to their respective lots; that they were purchasers *bona fide*, without notice of the plaintiffs' equity, and pleading adverse possession for more than twenty years.

The general nature of the suit was the same with that of McNair v. Picotte, 33 Mo. 57.

At the trial, the Circuit Court made the following finding:

The court finds the following facts: that on the 7th day of January, A. D. 1819, John Baptiste Duchouquette and Marie Therese Brazeau, each loaned unto Charles Delassus $2,000, for four years, to bear interest at the rate of ten per cent. per annum, and that said Delassus executed to each of said parties, Duchouquette and Brazeau, his notes for said principal sum of $2,000, and four interest notes of $200 each, said interest notes being made payable, respectively, on the 20th days of December, 1819, 1820, 1821, and 1822, and said notes for the principal sums being made payable on the 20th day of December, 1822. That to secure said loans said Delassus made and delivered to said parties two separate deeds of mortgage, conveying to each of said parties the tract of land in controversy, together with certain other lands. That the said mortgage from Delassus to Duchouquette was duly recorded in St. Louis county, on the 12th day of June, A. D. 1820, and said mortgage from Delassus to Brazeau was duly recorded in St. Louis county, on the 3d of February, A. D. 1824. That the first interest note of $200 due Mrs. Brazeau was paid, and the first interest note due Duchouquette was paid in part, and a new note for the balance of $55, remaining due thereon, was made on the 7th of March, A. D. 1820, by said Delassus. That said $55 note and all the other interest notes, together with the notes for the principal sums, were unpaid at maturity. That said mortgagees instituted suits in the St. Louis Circuit Court on said notes and mortgages as follows: Mrs. Brazeau sued Delassus in debt for the amount due on the notes secured by the mortgage to her, and also filed her petition for the foreclosure of the mortgage. Duchouquette sued Delassus in debt for the amount due on

the notes secured by mortgage to him, and for the $55 note of the 7th of March, A. D. 1820 ; and also filed his petition for the foreclosuse of the mortgage. That on the 8th day of July, A. D. 1824, judgments were rendered in debt in favor of Mrs. Brazeau, for $2,750, and for the foreclosure of the mortgage to her for the same amount ; and on the same day judgments were also rendered in favor of Duchouquette, for $2,827, in debt, and for the foreclosure of the mortgage to him for $2,750. That there were orders of sale in the judgments of foreclosure, but were never executed. That execution was issued on the judgment in debt in favor of Duchouquette, returnable to the December term of said St. Louis Circuit Court, 1827, and that upon execution the land in controversy was sold on the 13th day of December, A. D. 1827, to Theodore D. Papin, for $1,050. That execution was issued in favor of Brazeau, on the 25th of September, 1828, to Washington county, and levy made ; and upon advertisement being duly made, the land situate in said county, being the remainder of the property by said mortgages conveyed, was sold to said Duchouquette for the sum of $380, on the 22d day of October, 1828. That on the 19th day of December, 1827, Mrs. Brazeau and Duchouquette made a deed to said Theodore D. Papin for all their right, title, and interest, in and to the land in controversy, for the consideration of $5, which deed was truly recorded in the office of the Recorder of St. Louis county, on the 23d of February, 1828. That said Theodore D. Papin was the son-in-law of said Duchouquette ; but that said Papin was not the agent of said Duchouquette at the time of or after said sale of 1827. That said Papin took possession of the land in controversy under said sheriff's sale and deed of December 13, 1827, and under the said deed of Duchouquette and Brazeau, of December 19, 1827. That Duchouquette never took possession of the land in controversy either before or after said sheriff's sale of December 13, 1827. That Papin held adverse possession of the premises in controversy until the 13th day of July, 1831. That on said 13th day of July,

1831, Papin and wife, by warranty deed, sold said premises to William T. Phillips for $3,500, which was a full consideration for the same at that date. That said deed from Theodore D. Papin to William T. Phillips was duly recorded in St. Louis county, on the 8th day of October, A. D. 1832. That Phillips entered upon said land, and occupied and claimed it, making valuable improvements thereon. That Phillips' possession continued until April 12th, 1834, when he sold and conveyed said premises to William Carr Lane. That said deed from W. T. Phillips to W. Carr Lane was duly recorded in St. Louis county, on the 9th day of January, A. D. 1836. That there is no evidence that either said Phillips or Lane, at the time of their respective purchases, had any actual notice of the existence of said mortgages of 1819. That said Lane, and the defendants claiming under him, have had and held open, notorious, continuous, and exclusive possession of said premises, according to their several rights and titles, as stated in the pleadings and agreements in this cause, from the time of the said purchase by Lane from Phillips, until the commencement of this suit, claiming the same adversely to the said Charles Delassus and his heirs-at-law and grantees. That on the —— day of ——, A. D. 1832, Marie T. Brazeau made a deed of assignment to J. B. Duchouquette, of all her right, title, and interest in and to the mortgage, debts, and judgments thereon in her favor. That said Marie T. Brazeau died in 1833, and that said Duchouquette also died in 1833. That said Delassus removed from the city of St. Louis in 1825, in embarrassed circumstances; that said Delassus returned to St. Louis in the year 1836, being still embarrassed. That on the 12th of December, 1836, the executors of Duchouquette, Theodore Papin and Baptiste Duchouquette, assigned to M. P. Leduc, the agent of C. D. Delassus, whatever might then be due to the estate of Duchouquette on the judgments or debts, secured thereby in favor of Duchouquette and Brazeau, against Delassus, rendered July 8, 1824, and authorized said Leduc to collect the balance then due, which assignment was ratified by the heirs

of Duchouquette. That on December 15, 1836, Leduc, the agent of Delassus, settled with his principal, Delassus, and charged him $8,000, (less four per cent. for advance payment,) as paid to Duchouquette's heirs for the balance remaining due on the mortgages, after deducting the net proceeds of the sheriff's sales in St. Louis and Washington counties. That at the time of said settlement said Delassus knew of the sale to said Papin of the premises in controversy, and made no claim to said premises at that time or afterwards.

That after said settlement by Leduc with the executors or Duchouquette, said Leduc ordered said executors to enter satisfaction of the judgments of July 8, 1824, against the said Delassus, and in favor of the said Duchouquette and Brazeau; and satisfaction was accordingly entered on the margin of said judgments, in debt and for foreclosure, on the 16th day of December, A. D. 1836. That said satisfaction was made by order of said Leduc, as agent of Delassus; no other payment than that of $7,680, was made by said Leduc, agent of Delassus. That the parties did no act whereby they recognized said mortgages as subsisting at the time of the payment of $7,680, or at the time of the entry of satisfaction upon the margin of said judgments, and that said Delassus and his agent, Leduc, then knew that the parties in possession of the said two tracts of land were claiming under said Papin and Duchouquette, and claiming and holding said land as their own property, adversely to all other persons.

That said Delassus, after his visit to St. Louis in 1836, returned to New Orleans, and there died in 1843, leaving as his only child and heir Augustus Delassus, under whom the plaintiffs claim title by conveyances, stated in the petition. That there is no evidence in this cause showing that the defendants, or those under whom they claim, from Wm. T. Phillips down, had any actual notice or knowledge of the deeds of mortgage of 1819 on the judgments of 1824, or of the deed of Brazeau to Duchouquette of 1832, or of the settlement of 1836, or of any of the proceedings or documents connected with said settlement. That the mortgage

debts were extinguished by the sheriff's sales, and the payments made by Leduc, as agent of Delassus, on the 12th day of December, 1836 ; and that said mortgages ceased on said last-named day to exist as a lien or encumbrance on said lands. That there is no evidence of any fraud in the recovery of said judgments in debt and of foreclosure, or in the sheriff's sales of the real estate mortgaged in St. Louis or in Washington counties, or in the purchase by Papin or by Duchouquette of the tracts of land by them respectively purchased.

And upon the foregoing facts the court finds the following conclusions of law : That the sheriff's sale to Papin and the sheriff's sale to Duchouquette are, and each of them are, void. That the sheriff's deed to Papin and the deed of Duchouquette and Brazeau were and are, each of them, good and valid, as color of title, to commence the adverse possession of Papin thereunder, and the possession of Papin, Phillips and Lane, and their grantees, for a period of more than twenty-seven years next before the commencement of this suit, being adverse to Charles D. Delassus and his heirs and representatives, and all other persons, bars and precludes the plaintiffs from any relief claimed in the petition against the defendants for the said tract of land of twenty arpens, claimed in this action, and every part thereof, and vests a title in the defendants in fee simple, absolute in and to said twenty arpens of land and appurtenances, according to their several interests therein. That the compromise and settlement of 1836, and the entry of satisfaction on the margin of said judgment by the executors of Duchouquette, do not operate to prevent the running of the statute of limitations in favor of Papin, and those claiming under him, as to said twenty arpens of land, and do not operate as any recognition of said mortgages, as subsisting mortgages, against the said land, sold at sheriff's sale, and then in the adverse possession of defendants and those under whom they claim, and that plaintiffs pay all the costs of this suit.

And it is therefore considered adjudged and decreed by

the court, that the plaintiffs' petition in this action be, and the same is absolutely dismissed; and that the plaintiffs pay all the costs of this suit, and that the defendants have execution therefor.

*Cates & Wood,* for appellants, filed a printed argument in the case.

I. The courts of the United States, and particularly New York, Massachusetts, and Missouri, have adopted the rules and doctrine of Mansfield, taken from the civil law, which are, " That after forfeiture the mortgagee and his *assignees* hold possession of the pledged land as mere *trustee* for himself and the mortgagor; first, to pay the mortgage debt out of the rents or by sale thereof; second, to *surrender* the same to the mortgagor or his assignees, heirs, &c., whenever the debt is satisfied." (Parson's case, 17 Mass. 419; 3 Mass. 138, 158; 6 *id.* Pollock case, 240; 3 Mason, 526; 4 Kent Com. 193; this case, 25 Mo. 182; McNair case, 8 Mo. 188; case of Thornton, 24 Mo. 249; Lumley case, 26 Mo. 367; 21 Mo. 285; case of Benton, 8 Mo. 650; 1 Hill on Real Prop. 405; 2 *id.* 1–3; 2 *id.* 109; 9 Paige, 517; 2 Pick. 146; 2 Sch. & Lefr. Rep. 218; 1 *id.* 380; and Adams' Equ. 256.)

What were the relative rights of the parties at the time mortgagees *surrendered* possession to Papin in 1827 ? Certainly Papin acquired no other right in the land than that held by mortgagees, because the sale and purchase through the sheriff was a fraud on the process of law and rights of Delassus; therefore, absolutely inoperative and void. And hence Papin was nothing but a mere *assignee* and *trustee* of the mortgagees, holding possession of the land for them and Delassus until such time as the mortgage debt was paid by rents and profits thereof, or was otherwise satisfied. Papin had no estate of *inheritance* in the land, because the mortgagees had none. That estate was in Delassus in virtue of mortgage contract, then fresh and in full operation on account of its revival by *scire facias*. (See case of McNair, 8

Mo. 188, and those of Thornton and Lumley, 26 Mo. 367; 1 Vt. 132; 1 Sch. & Lefr. Rep. 380; 4 Dana, 285–288.)

If the sheriff's sale vested in Papin any right, which we positively deny, it was the right to satisfy or pay the mortgage debt. This he failed to do, and at no time pretended that he was bound to pay the same. And as evidence that neither mortgagees nor Papin so understood his purchase, the latter never claimed any right or ownership in the mortgage debts, otherwise they would have been assigned to Papin instead of the land; and if such had been the case, all the right or power resulting to him would have been to sell the land under the mortgage judgment, which was never done by any person. (See cases *supra*, 5 Mad. 290.)

II. Suppose, for sake of the argument merely, that the entry and possession of Papin was hostile to the right of entry and redemption of Delassus—which to our view of the rules of law is an absurd assumption—what benefit, could he or those claiming under his deed of assignment have, in virtue of such hostility, in order to create an estate by lapse of time?

We answer that the deed of assignment of Brazeau of her interest in the mortgage judgments and debts to Duchouquette not only revived the relation of mortgagor and mortgagee, but positively recognized its *existence* in 1832. And when we find that those judgments were satisfied in the most solemn manner by Delassus in 1836, no mind can for a moment doubt that this act was conclusive evidence of the *recognition* of the mortgage contract then existing, and vested in him a perfect right to enter and take possession of the land. And with equal force and power the law demanded of Papin and his assignees that they should surrender up the land, and account for the rents, profits, &c. No pretended hostile holding thereof by them, or either of them, from 1827 to 1836, about nine years, could create a legal estate; because such satisfaction was a direct recognition of the contract of mortgage, and cut off the operation of the statute of

limitation, and placed all the parties precisely where they were in 1827, with this difference, that the right of Delassus to have possession of the land was perfect; and the withholding the same on the part of mortgagees and their assignees was a gross *fraud,* and direct violation of their positive duty and obligation under the contract of mortgage. (See cases *supra,* 1 Mad. Rep. 278; Rob. Fraud. Con. 520.)

Again, the law demands that whenever a judgment or mortgage deed is paid or satisfied, the same shall be noted on the record thereof by the party receiving such satisfaction, which evidence of the fact of payment cannot be impeached or questioned by parol proof. And where such entry is made on margin of the record of mortgage deed, it is not only conclusive evidence of satisfaction of mortgage debt, but operates as a *release* of all right in the land of mortgagee. (R. C. 1835, p.—, and case of Vallé, Adm'r, 27 Mo. 455.)

And in 1845 this purchaser and hostile holder of the land from 1827 to 1832, who is the *head spring* from which respondents derive their fraudulent and filthy stream of title, as representatives of the estate of the mortgage, fully and freely acknowledged satisfaction of the mortgage debt as required by the above recited statue.

But, separate from the great fact of *satisfaction* and *recognition* of the mortgage contract, this marginal written entry of Papin conclusively proves the *quo animo* with which he entered and took possession of the land under deed of mortgagees and sheriff sale, in 1827; because, in all cases where a claim to land is based on adverse possession, the intent with which the entry was made and continued is the vital *element* of title. In other words, the idea that he entered on this land in his own right, and was too have the land without payment of the mortgage debts, is too absurd to require further comment. (See cases *supra,* and particularly 4 Cranch, 415; 2 Binney, 468; 9 Wheat. 489; 1 John. Ch. 489, 385; 2 Cruise, 156; 5 John. Ch. 545; 18 Ves. 455; 10 Wheat. 152; 26 Mo. 291; 3 Sumner 152, 2 Cow. 195, 232.)

III. But in regard to the defence as made by respondents, it amounts to this, and nothing more, to wit:

*a.* We admit the mortgage contract, and claim title as *bona fide* purchasers for value, without notice of the title of Delassus or his legal representatives.

*b.* That we and those under whom we claim have held a continuous adverse possession under color of title for twenty years before the commencement of this suit.

*a.* How can the respondents be *bona fide* purchasers upon the facts proved and admitted in the record? The sheriff sale and deed to Papin and that of mortgagees to him were of record in due form of law in 1827; also the mortgage deeds and judgments thereon. Certainly it was the imperative duty of respondents to look at those records. And if the fact be that mortgagees intended by their sheriff sale and deeds to Papin to divest Delassus of his right to redeem the land, such action was a fraud and inoperative for any such purpose. But as the law never presumes fraud or bad faith, we say upon the facts clearly proved, and in the absence of proof of the contrary, that the entry and possession of respondents, and those under whom they claim, was *amicable* and not *adverse* to the right of Delassus. And if not amicable, it originated in fraud and violation of law: and fraud can avail no man; it is a certain *death* to all defences based thereon in a court of justice. (See cases *supra*, and 2 Cruise, 161; 1 John. Ch. 402, 595; case of Orde, Ch. Cas., 9; 2 Conn. 610; 1 *id.* 288; 17 Mo. 87; 2 Powell, Mort. 1066–1079.) But how is it possible respondents can be purchasers without notice of the title of Delassus or his legal representatives? We answer as above stated, the mortgage deeds and judgments thereon were of record in 1824 and 1827, and satisfaction of the latter in due form of law made in 1836. What notice can be more powerful to a subsequent purchaser than that? That is notice to all the world and binding on all men, and is more effective than actual notice or knowledge; because the latter is dependent on proof of

extraneous facts and circumstances, and when proved only operates on the party who receives it. The former proves itself, and operates indiscriminately on all persons. (See 1 John. Ch. 398; 1 Powell, Mort. 386; 2 *id*. 562, 576, 589, 634.)

Again, the deeds from Papin to Phillips, and from him to Lane, and from him to Blow and Labaume, all refer to each other in a continuous *chain* up to the deed from mortgagees, reciting the book and page in the recorder's office of each. The recitals in these deeds are of themselves legal or constructive notice sufficient to create the rule of *caveat emptor* as to the respondents and those under whom they claim. (2 Cow. 320; 1 Story, Eq. Juris. § 403; 1 John. Ch. 394–397; 6 Barb. 337; 2 Paige, Ch. 220; 17 Mo. 87; 2 John. Ch. 32.)

*b.* In order to create an estate in land by *lapse* of time, the " inception and continuance " of the entry and possession must be hostile or adverse to some other estate or title. For, if such possession commences *amicable* and not *hostile ;* or, if after it commences hostile, and for a time however short, ceases its hostile character, such amicable commencement continues until otherwise made known. And if it commences as hostile, a cessation thereof destroys its legal effect during such time; or, in other words, if the *head link* in the chain is amicable, it gives like character to all others; and if one of the small links is broken, the chain is powerless. (1 Cow. 285; Sumner, 109. )

Again, if the faet be true, and of which there is no doubt, that the deed from sheriff was void on account of fraud in law, technically called *constructive fraud,* we ask how can such deed operate for any purpose whatever? And in this connection there is a vast difference between a deed absolutely *void* and one that is *voidable.* In other words, a deed *prima facie* valid may feed the statute of limitations in order to shelter an adverse holder of land. But no wise jurist has said, or ever will say, that a deed absolutely void can *feed* or sustain anything. (See 2 Cruise, 139; 3 *id*. 496; 2 *id*. 139; 2 B. Mon. 424; Sug. Vend. 469 to 506; 9 Wheat.

498, 541, 550; 5 Cow. 74–90; 26 Mo. 291; 19 John. 325; 28 Mo. 481; 29 Mo. 176; 30 Mo. 99; 32 Mo. 160.)

We desire to keep the mind of this court the important fact indicating the *quo animo* of Papin and mortgagees at the time he entered on the land; which is, that he did not take possession under sheriff's sale and deed, but, as expressly stated in the deed of mortgagees to him, dated four days after sheriff's deed, " he took possession of the land on that day from them." (See cases *supra*, and particularly Angell on Lim. 81; 3 John. 124; 3 John. Ch. 129; 12 John. 365; Angell on Lim. 385; 1 Burr. 60; 3 Sumner, 152; 6 B. Mon. 75; 7 *id.* 117; 1 Dana, 3; 9 *id.* 469.)

But adverse possession without color of title only operates on the land actually occupied *pedis possessio;* and when under color of title, it extends to the enclosure made on the land.

That a deed or patent, in order to give color of title to an adverse claimant of land, must manifest a *prima facie* valid title.

That if the deed, or other instrument of paper title, manifests *prima facie* that it is the result of *fraud* or otherwise *void*, it gives no color of title.

That there is a marked difference between paper title which is void, and that which is merely voidable. The first operates on nothing, for want of life; the other has apparent life and may live forever.

That a deed which upon its face is connected with or results from an amicable and not a hostile relation, such as assignee of mortgagee or purchaser under executory contract merely, such deed can never operate to shelter, commence, or continue the right of an adverse claimant. If the rule were otherwise, the statute of limitations, instead of being a kind friend to the innocent and *bona fide* purchaser, would become an instrument of fraud and bad faith in the hands of wicked men, and enable them to take advantage of their own fraud and wrong. (See cases *supra* and 5 Cow. 74; 3 Wash. 475; 12 John. 365; 3 Pick. 475; 5 *id.* 150; Ang. Lim. Equ. 83, 123; 12 John. 365; 2 Raymond, 829; 3 Paige,

421 ; 9 *id.* Ch. 315 ; 1 Burr. 60 ; Ang. Equ. Lim. 42, 83 ; 5 Day, 341.)

Delassus' right of entry or cause of action never did accrue until the 13th day of December, 1836, when he satisfied the mortgage judgments. Certainly on that day, and at no time prior thereto, did the relation of mortgagor and mortgagee end. That relation existed from 1824, and was fully recognized by all parties in 1827, in 1832, in 1836, and in 1845. (See cases *supra*, and 10 Wheat. 132, 152 ; 2 Merivale, 357 ; 2 Jac. & Walk. 153 ; 9 John. 180 ; 2 *id.* 234 ; 1 Cow. 285 ; 5 *id.* 350 ; 9 Wheat. 550 ; Ang. Lim. 385.)

*c.* But it may be urged by respondents, that although the possession of Papin was amicable to the mortgage contract, yet that of Phillips was hostile, and which ended in 1836. We answer that the deed from Papin to Phillips incorporates the deed of mortgagees, and refers to same by book and page in Recorder's office ; and in like manner the deed from Phillips to Lane, under whom respondents now directly claim ; in other words, these deeds from mortgagees down to Lane are but one and the same thing—should be read and considered as endorsements by way of assignment on the original deeds of mortgage. And each and every party to these assignments held and claimed the land in virtue of the mortgage contract, and thereby became in law and in fact mere *tenants* or *trustees* for the use of Delassus. (See cases *supra* and 1 Cow. 610 ; 3 Bland, 551 ; 5 Mad. 481 ; 8 Cow. 361 ; 2 Dev. & Bar. Ch. 130 ; 9 Paige, Ch. 315 ; 2 Cruise, 161 ; 1 John. Ch. 402, 595.)

*d.* Again, it may be urged by respondents that the satisfaction of the mortgage debts in 1836 was a compromise whereby the estate of Delassus in the land was *waived* or *abandoned* by him ; certainly there is not the slightest written evidence of the fact ; but, on the contrary, all the written and record evidence is directly opposed thereto.

But suppose, for the sake of the argument, Delassus did thus stultify himself in ignorance of his legal rights ; or even suppose he had reduced this waiver, abandonment, or sur-

render of the land, to writing, and signed the same, can it be presumed that any wise and just court, under all the circumstances of this case, would refuse him relief from such an oppressive and heartless contract of surrender? In answer, we invite particular attention to the great case of Russell, 12 Howard's U. S. Rep. 142–157.

But the strangest part of this case, touching this matter, is the finding of the Circuit Court, which may be stated thus:

1. That respondents never had "actual knowledge or notice" of the deeds of mortgage of 1819; or the judgments of 1824; or deed of Brazeau to Duchouquette in 1832; or the settlement of 1836; or of any proceedings or documents connected with said settlement.

2. That said mortgages, on the 12th day of December, 1836, "ceased to exist as a lien or encumbrance upon said lands." They were extinguished by the sheriff's sale, and payment of Delassus, on the 12th of December, 1836.

3. That Papin took possession under the deeds from sheriff and mortgagees in 1827.

4. That the sheriff's sale to Papin and Duchouquette is *void*.

5. That the deeds of sheriff and mortgagees to Papin were each of them good and valid as "color of title" to commence the adverse possession of Papin thereunder, and those claiming under him for more than twenty-seven years before suit, and preclude the appellants from any relief.

Each and all matters of fact and law touched by the above finding has been commented on by us; yet we cannot, in justice to our cause and the interest of civilized jurisprudence, close without a direct notice thereof. What has "actual knowledge or notice" to do with this case? Record notice is the highest grade of notice; and constructive notice, such as recitals in deeds, are conclusive on parties thereto, and privies, as before stated by us. Hence, whether respondents have "actual knowledge or notice" of the deeds of mortgage is nothing; but if they were recorded in due and proper form, it is all the law demands. (See cases *supra*.)

*B. A. Hill, Whittelsey, R. M. Field, and C. Gibson,* for respondents.

I. It is stated in the petition that the mortgages passed the legal title to Brazeau and Duchouquette; but this left an equity of redemption in Delassus, and in this country the mortgagor is the owner. (4 Kent. C. 160; Kennett v. Plumer, 28 Mo. 145; 1 Ter. L. 47, 183.)

II. As there were two mortgages, and judgments for the mortgage debts, and, therefore, either mortgagee could purchase the equity of redemption of the mortgagor upon the other mortgage. Papin, therefore, bought the legal title in 1827. As he was a third party, not a party to either record, his purchase gave him the legal title in law, no matter what it might have been in equity. (McNair v. O'Fallon, 8 Mo. 188, Rankin's lot; McNair v. Biddle, 8 Mo. 257; 4 Kent. C. 184, *n.* 183; Jackson v. Hull, 10 J. R. 481; Yantis v. Broadwell, 10 Mo. 398; Phillips v. Edmonson, 17 Mo. 579; Delassus v. Patton, 19 Mo. 425; S. C., 21 Mo. 543; Lumley v. Robinson, 26 Mo. 364.)

III. The supposed redemption of 1836 the court finds was but a payment of the balance due, allowing the money made on the executions, and therefore was no payment or redemption of the mortgage; was not made to the parties who owned the land, and could not affect Phillips and his assigns, who bought the fee with warranty, without notice of any outstanding equities. (Wood v. Todd, 10 Mo. 189; Gale v. Mensing, 20 Mo. 461.)

IV. Phillips, Lane, and their assigns, are purchasers for value, *bona fide,* without notice. (Le Neve v. Le Neve, 2 W. & T. L. C. 116, 120, Am. Ed.; Boggs v. Varner, 6 W. & S. 469; French v. Loyal Co. 5 Leigh, 627; Crockett v. Maguire, 10 Mo. 34; Lodge v. Simonton, 2 Penn. 439; White v. Carpenter, 2 Paige, 217, 253; Connecticut v. Bradish, 14 Mass. 291; Goundie v. Northampton Water Co., 7 Barr. 233.)

V. Defendants have had adverse possession since 1831, more than twenty years. (Bollinger v. Chouteau, 20 Mo. 89 ; Keeton v. Keeton, 20 Mo. 530 ; McNair v. Lot, 25 Mo. 189, and cases cited.)

VI. Plaintiffs cannot maintain ejectment. The petition states that defendants have legal title. The defendants have no joint possession, but several titles and possessions. (Doan v. Holly, 25 Mo. 357 ; 26 Mo. 186 ; 9 Mo. 273 ; 20 Mo. 229 ; Stalcup v. Garner, 26 Mo. 72 ; Liney v. Martin, 29 Mo. 28 ; Carrie v. Tomlinson, 17 Mo. 499.) All parties must be brought in. (Gamble v. Johnson, 9 Mo. 597 ; Ruby v. Strother, 11 Mo. 417.)

DRYDEN, Judge, delivered the opinion of the court.

The defence that prevailed in this case in the court below was limitation. And in the view we take of the case it will be unnecessary for us to pass upon the question of the validity of the paper title originating in the sheriff's sale to Papin, and relied upon by the defendants, which was held by the lower court to be invalid.

The court, in its finding of the facts, found that the defendants and those under whom they claim had had a continuous adverse possession of the land in dispute, under an exclusive claim of title, for more than twenty-seven years next before the commencement of the suit, and declared the law to be that the plaintiffs, by reason of such adverse possession, were barred of their action.

The only matter about which there was any serious dispute was as to what were the facts in the case. That question has been settled by the finding of the court— settled, as we think, in conformity with the evidence.

To show a recognition of the existence of the mortgage by the mortgagees as an encumbrance on the property, within twenty years next prior to the commencement of the suit, and thus defeat the plea of the statute of limitations, the plaintiffs averred and attempted to prove that in December,

1836, Delassus, the mortgagor, paid, and Papin, as executor of Duchouquette, accepted payment of the entire mortgage debt and interest, on and in discharge of the mortgage ; but the court negatived this averment by finding that the payment made was not of the entire debt and interest, but of so much only of it as remained after deducting the net proceeds of the sale of the mortgaged lands ; and not on or in discharge of the mortgage, but on and in discharge only of the balance of the debt and interest that remained after the application of the mortgage sales.

Then, according to the finding of the court, sustained too by the evidence, the defendants and those under whom they claim had been in the peaceable and undisputed possession of the mortgaged premises, claiming as their own, without any recognition of the mortgage as an existing encumbrance for more than twenty-seven years before suit brought. The facts being thus settled, there can be no reasonable doubt as to the law arising upon them.

In the great case of Marquis Cholmondeley v. Lord Clinton, 2 Jac. & Walk. 187, Sir Thomas Plumer, Master of the Rolls, in delivering the opinion of the court, says : " Actual possession of the mortgagee continued for twenty years without any payment of interest by the mortgagor, or anything done or said during that period to recognize the existence of the mortgage, or to acknowledge it on the part of the mortgagee, would clearly operate as a bar to redemption by the mortgagor. This has been so long and so clearly settled that it would be an useless waste of time to refer to the authorities upon so well known a subject. * * * * Possession in the mortgagee must at its commencement have been taken, under the engagement which equity always implies, to account as a baliff for the rents and profits with the mortgagor, and to apply them to the discharge of the mortgage debt. If this be not punctually and regularly done, and the account fairly and properly kept by the mortgagee, it is a violation of the implied engagement under which he holds the possession. The possession is all along

consistent with the equitable title of the mortgagor, who may be disabled by poverty and distress to enforce the account and redemption. Yet such is the prevalence of analogy in equity, that even under such circumstances the possession of the mortgagee for twenty years, without a recognition of the mortgage title, or any account kept upon the footing of it, becomes a subject of equitable bar to redemption, notwithstanding a clear title to redemption in the one party, and on the other side a continued misapplication of the rents and profits of the estate committed to his care, contrary to his engagement, and a continued breach of duty from the beginning to the end of the period, in omitting to keep the account."

In a suit to redeem a mortgage, Demarest v. Wynkoop, 3 John. Ch. 135, Mr. Chancellor Kent said: "It is a well settled rule, that twenty years' possession by the mortgagee, without account or acknowledgment of any subsisting mortgage, is a bar to a redemption, unless the mortgagor can bring himself within the proviso in the statute of limitations."

To the same effect in Elmendorf v. Taylor, 10 Wheat. 152. See, also, Ang. on Lim. 504, 505, § 21.

Thus stands the law in cases directly between mortgagor and mortgagee, where it is seen the possession of the mortgagee with the bare omission to recognize the existence of the mortgage for the period of time which, by the statute of limitations, would be required to bar a legal title, is a bar to the equity of redemption.

But with how much more force does the rule that bars the mortgagor as between him and the mortgagee, apply to a case like the one at bar, where the possession is by a stranger, and is from the beginning, and continues to be, hostile to the title of the mortgagor. In the language of the Master of the Rolls in the case already cited, (2 Jac. & Walk. 188, 189,) a case strongly resembling this in some of its features: "The possession is taken adversely, under no contract express or implied, by a stranger, between whom and the person wrongfully kept out of possession there is

no privity or engagement of any kind, who is under no obligation to render any account, whose possession is from the first inconsistent with, and therefore adverse to the title of the rightful mortgagor. Surely, upon every principle of reason and equity, the same analogy to the statute of limitations which prevails in the one case" (the case of mortgagor against mortgagee) " must *a fortiori* prevail in the other," or the case of mortgagor against a stranger holding adversely.

In the case of Cholmondeley v. Clinton, on appeal to the House of Lords, (2 Jac. & Walk. 191,) the Lord High Chancellor, Eldon, concluded his opinion by stating, " that adverse possession of an equity of redemption for twenty years was a bar to another person claiming the same equity of redemption, and worked the same effect as disseisin, abatement or intrusion, with respect to legal ·estates ; and that for the quiet and peace of titles and the world, it ought to have the same effect."

In our opinion the Circuit Court committed no error, and its judgment is therefore affirmed.

Judge Bates concurs, Judge Bay not sitting in the case.